[Civ. No. 24023. First Dist., Div. Three. Sept. 19, 1967.]

JOHN MORRELL & CO., Plaintiffs and Appellants, v. CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD et al., Defendants and Respondents; GEORGE MESURE et al., Interveners and Respondents.

456

Angell, Adams, Gochnauer & Holmes, Angell, Adams & Holmes and Andrew H. Field for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, and Clayton P. Roche, Deputy Attorney General, for Defendants and Respondents.

Charles P. Scully and John B. Salazar for Interveners and Respondents.

BROWN (H. C.), J.—This is an appeal from a judgment of the superior court denying a petition for writ of mandate to compel respondents, California Unemployment Insurance Appeals Board, to set aside an award of unemployment compensation benefits to appellants' employees, and to strike certain charges made to appellants' reserve accounts.

Appellants are 44 wholesale meat companies operating in the San Francisco and East Bay areas under collective

bargaining agreements with the Butchers and Sausage Makers Unions. Following expiration of the agreements and while the parties were holding meetings to negotiate a new agreement, a work stoppage occurred which lasted five weeks. The Director of the Department of Employment determined that the employee members of the unions involved were entitled to unemployment benefits. His decision was approved, after a hearing before a referee, by the California Unemployment Insurance Appeals Board. The board adopted the statement of facts proposed by the referee and benefits were thereafter paid to the employees.

The board's award resulted in charging appellants' individual reserve accounts with the unemployment insurance payments, thereby increasing appellants' rate of payment into the unemployment insurance fund.[1] The petition for writ of mandate sought to set aside the award and to require the department to credit appellants' reserve with the amounts paid.

Appellants' sole contention is that the work stoppage was due to a labor dispute within the meaning of section 1262 of the Unemployment Insurance Code and that the employees were thus ineligible for benefits.

Section 1262 of the Unemployment Insurance Code provides: "An individual is not eligible for unemployment compensation benefits, and no such benefits shall be payable to him, if he left his work because of a trade dispute. Such individual shall remain ineligible for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment in which he was employed."

There is no material disagreement as to the facts. Appellants and the unions had a collective bargaining agreement which expired October 1, 1964, but which was extended to October 5, 1964. During August and September of that year, a number of meetings were held to negotiate the new agreement. On September 28 and 29, employees voted their representatives the authority to call a strike but set no date for stopping work. Appellants were not officially informed of the strike vote by the unions but learned of it from their employees and, as a result, thereafter requested the union representatives to

---

[1] See section 1025 et seq. of the Unemployment Insurance Code.

extend the existing contract or to give 72 hours' notice before the calling of a strike. This request was refused.

Representatives of the union and appellants met on October 5 and at the conclusion of the morning session another request was made by appellants for an extension of the agreement or a strike notice. The unions were informed that on Monday, the next working day, the normal weekly supply of meat would be delivered to appellants' plants, and that an extension of their contract was mandatory if the plants were to continue in operation without fear of great loss in the event of a sudden strike. The unions refused the request and stated that during the negotiations the expiring agreement would be extended only from meeting to meeting or caucus to caucus.

During the evening of October 5, appellants notified the unions that, since their requests for a reasonable extension of the labor contract had been rejected, the contract would expire on that date, and the plants would close operations. The unions replied that their members would report for work the next day, as usual.

Appellants posted a "no work available" notice at their plants. After October 6, 1964, appellants' supervisors and salesmen were put to work disposing of the inventory on hand and spent the balance of the month doing maintenance, repair or cleaning of the plants. The plants ceased to operate as to all other employees. No ultimatum or date of strike action had been given by any union official. None of the union members refused to work, and there was no strike or picketing conducted by any union at any of the plants involved in the negotiations. The unions did not obtain the necessary approval to strike from either the international union or the San Francisco Central Labor Council. Negotiations between appellants and the unions continued throughout October, and a new contract was finally agreed to in principle on November 6, 1964, at which time the employees returned to work, having been paid unemployment insurance benefits during the work stoppage.

The word "dispute,"[2] used in section 1262 of the Unemployment Insurance Code, if defined and applied literally, would prohibit employees from receiving benefits in every case where the employer's union contract had expired and new

---

[2] According to Webster's New International Dictionary (3d ed. 1961), the word "dispute" means: "verbal controversy: strife by opposing argument or expression of opposing views or claims: controversial discussion."

terms were being urged by either or both parties. But, as prior cases show, application of the statutory language to particular fact situations has given varied results. ■ Although guideposts have been erected and directions given, the only clear rule established is that each case must be decided upon its own peculiar facts. (See *Bodinson Mfg. Co. v. California Emp. Com.*, 17 Cal.2d 321 [109 P.2d 935]; *Ruberoid Co. v. California Unemp. Ins. Appeals Board*, 59 Cal.2d 73 [27 Cal.Rptr. 878, 378 P.2d 102]; *Bunny's Waffle Shop, Inc. v. California Emp. Com.*, 24 Cal.2d 735 [151 P.2d 224].)

The facts in *Coast Packing Co. v. California Unemp. Ins. Appeals Board*, 64 Cal.2d 76 [48 Cal.Rptr. 854, 410 P.2d 358], closely parallel the facts of the case now before us. In that case, as in this, the meat packers sought some assurance from the unions that a strike would not be called without first giving notice to the packers so that they could clear their pens and coolers and protect themselves against loss. There, as here, assurance was refused, and the packers closed their plants. The issue in *Coast Packing* was the same as in our case, namely, whether the reserve account of the employers should be charged with unemployment benefits paid to the packers' employees. In answering that question the court had to decide whether the employees left their work "because of a trade dispute" within the meaning of section 1262 of the Unemployment Insurance Code. The court applied the voluntary test of *Bodinson, supra,* and concluded that the employees were not unemployed of their own volition and hence were entitled to unemployment insurance benefits. ■ The court said at pages 79-80: "If employees are to be denied benefits it is apparent that there must be some volitional conduct on their part which reasonably causes the work stoppage. There was no such conduct in the present case. It appears that the union only refused to give some assurance that it would not take such action. In that circumstance there was no volitional act which reasonably would warrant a work stoppage, and the workers cannot be held to have voluntarily left their work because of a trade dispute when the employers elected not to operate in the absence of the requested assurances. . . .

"There is, of course, always a threat of strike in the absence of a collective bargaining agreement, and one of the recognized tools available to a labor union is the application, by striking, of economic coercion designed to persuade an employer to the union's point of view. If we were to conclude

.that. the unarticulated threat of economic coercion is a suffi-
cient volitional act to disqualify an employee when his
employer ceases operations rather than continue under a
claimed threat, what action on the part of the union can be
deemed to constitute such threat? Certainly it cannot be the
mere association of employees for collective bargaining pur-
poses. Nor can the further circumstance that negotiations are
under way and the union has rejected employer proposals for
ground rules during negotiations require disqualification.
That, in substance, is our case.''

The court in *Coast Packing* also rejected the argument that
the shutdown of the employer's plant was a prudent act and
was economically justified to prevent the loss of its meat
inventories. The court said that there was no ''basis for
imposing upon a worker in the meatpacking industry a differ-
ent test from that in the case of other workers for the deter-
mination of when 'he left his work because of a trade
dispute.' '' (At pp. 80, 81.)

The court in *Gardner* v. *State of California*, 53 Cal.2d 23
[346 P.2d 193], in approving the volitional test as set forth in
*McKinley* v. *California Emp. Stab. Com.*, 34 Cal.2d 239 [209
P.2d 602]; *Bunny's* and *Bodinson, supra*, used the following
language: ''As applied in the subject and cited cases the rule
works impartially as to both employes and employers and
puts each group on notice that the one which creates and first
applies the economic weapon in a trade dispute under circum-
stances such as those present in Bunny's Waffle Shop, or
McKinley or here, may have to bear responsibility for *foresee-
able reprisals*.'' (At p. 30; italics added.)

The volitional test is a subjective test to determine who is
responsible for claimants' unemployment. In *Chrysler Corp.*
v. *California Emp. Stab. Com.*, 116 Cal.App.2d 8, 15 [253
P.2d 68], the court said: ''This 'volitional' test postulates the
need for an inquiry into the dynamics of the circumstances
which have created the unemployment, the criteria for denial
or awarding of benefits being the personal responsibility of
the claimant for his unemployment in the former case (cita-
tion), or the fault of the employer in the latter case. (Cita-
tion.) '' (See *Gardner* v. *State of California, supra*.)

Appellants seek to distinguish the *Coast Packing* case
by directing attention to some differences in the factual situa-
tion. In *Coast Packing* the unions had not voted to strike and
had offered the employers a ten-day extension of the contract.

Appellants argue that here the unarticulated threat of a strike has been increased to reasonable certainty by the strike vote and the refusal to either extend the contract or to give a notice of strike. They urge that the strike vote was the use of an economic weapon comparable to the employees' action in the *Bunny's Waffle Shop* case. But here the unions were further required to obtain strike sanctions from both the international union and the San Francisco Central Labor Council. There is no reason to assume that these union procedures are perfunctory and that the employers would not have had ample time to dispose of their inventories during the time required by the union in obtaining the necessary consents to strike, if in fact those consents would have been given.

Further, although a strike vote was taken, no date to strike was set. The factual situation presented here does not bring the case within out-of-state authority quoted with approval in *Coast Packing.* (P. 81.)

Applying the volitional test here, as we must, we conclude that appellants ceased operation of their plants by their own choice, and that their employees were willing to work but were prevented from doing so by the action of their employers. The refusal by the union representatives to accept "ground rules" for conducting negotiations dictated by the employers' representatives does not justify a cessation of plant operations which precludes respondents from the benefits of the act.

The judgment is affirmed.

Draper, P. J., and Salsman, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 15, 1967.