[L.A. No. 30281. In Bank. Sept. 24, 1974.]

MASAYOSHI ISOBE et al., Plaintiffs and Appellants, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent;
SOUTHWEST ENGINEERING CO. et al.,
Real Parties in Interest and Respondents.

## COUNSEL

Richman & Garrett, Lionel Richman, Ivan J. Potts and Walter C. Appling for Plaintiffs and Appellants.

Stephen P. Berson, Stefan M. Rosenzweig, Robert T. Olmos, Richard M. Pearl, Daniel E. Luevano and Richard A. Paez as Amici Curiae on behalf of Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, Edward M. Belasco, Thomas E. Warriner and Ronald Gold, Deputy Attorneys General, for Defendant and Respondent.

Gibson, Dunn & Crutcher, Jerome C. Byrne and Bette Bardeen for Real Parties in Interest and Respondents.

## OPINION

**CLARK, J.**—Plaintiffs (hereafter petitioners) appeal from a judgment denying writ of mandate to set aside decisions of the California Unemployment Insurance Appeals Board rejecting their claims for unemployment insurance and disability benefits.

Petitioners comprise two categories: those claiming entitlement to disability benefits (Ross and Helm) and those claiming the right to unemployment insurance benefits (the Isobe group). All petitioners, members of the boilermakers union, went out on strike against a Los Angeles engineering company on 1 August 1971 because of a disagreement between the union and management over terms of employment. On 18 August 1971 a presidential order, declaring a 90-day wage and price freeze, requested termination of the work stoppage. Following the order, the union offered during negotiations to return to work immediately on condition that all employees be reinstated. Since it desired to retain persons hired while the strike was in progress, the company refused to accede to this demand, and no agreement was ever reached. Eventually all petitioners, except Ross and Helm, found positions elsewhere.

Thereafter, the Isobe group, contending the trade dispute terminated with the union's offer to return to work on 18 August, filed for *unemployment insurance* benefits; and Ross and Helm filed for *disability* benefits. The Department of Human Resources Development denied benefits to both groups, who then appealed.[1]

On 22 December 1971 the referee determined the trade dispute ended on 18 August when the union unconditionally offered to return to work, making petitioners' subsequent unemployment due to the action of the employer. Unemployment compensation benefits were then awarded to the Isobe group and disability benefits, to Ross and Helm.[2]

On 29 December 1971 the company appealed the referee's decision to the board pursuant to Unemployment Insurance Code section 1334,[3] and approximately three months later the board issued an opinion, concerning

---

[1]In unemployment and disability cases, provision is made for two administrative appeals—one before the referee and one before the appeals board. (Unemp. Ins. Code, § 1334.)

[2]Entitlement to payments was conditional on the employees being otherwise eligible.

[3]All references are to the Unemployment Insurance Code unless specified otherwise.

Section 1334 provides: "A referee after affording a reasonable opportunity for fair

*only* the Isobe unemployment claimants. The board concluded the union's offer to return to work was conditional, the striking employees did not consent to halt the strike, and, therefore, the trade dispute did not terminate on 18 August, making the unemployment claimants ineligible for benefits under section 1262.[4]

Seven days after rendering decision on the Isobe group, the board ruled the company could not participate in the disability cases since it was not a proper party appellant.[5] On its own motion the board then assumed jurisdiction over the disability claims. Subsequently, reversing the referee's determinations, the board held that since the disability claimants actually discontinued work because of a trade dispute, they were disqualified under section 2677[6] from receiving benefits.

Petitioners contend they became eligible for benefits on 18 August because the company failed to offer employment to any of the striking workers.

■ Employees who leave work because of trade disputes become ineligible for unemployment compensation benefits if such departure is voluntarily undertaken (§ 1262; *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 328 [109 P.2d 935]; *McKinley* v. *California Emp.*

---

hearing, shall, unless such appeal is withdrawn, affirm, reverse, or modify any determination which is appealed under this article. The claimant, any employer becoming a party to the appeal by submitting a protest or information pursuant to Sections 1326 to 1333, inclusive, of this article, and the director shall be promptly notified in writing of the referee's decision, together with his reasons therefor. The decision shall be final unless, within 10 days after mailing of such decision, further appeal is initiated to the appeals board pursuant to Section 1336. The 10-day limitation may be extended for good cause."

[4]Section 1262 provides: "An individual is not eligible for unemployment compensation benefits, and no such benefit shall be payable to him, if he left his work because of a trade dispute. Such individual shall remain ineligible for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment in which he was employed."

[5]This decision was apparently based on section 2603 which provides the employer's account is not to be charged for disability benefits.

[6]Section 2677 provides: "An individual who is disqualified from receiving unemployment compensation benefits under Section 1262 shall be presumed to be ineligible to receive disability benefits under this part for the same period or periods unless the individual establishes, pursuant to authorized regulations, that his alleged disability was the result of an accident or required a period of hospitalization, that it was not caused by and did not arise out of the trade dispute, and that it would have occurred and would have prevented him from continuing his work if the trade dispute had not occurred. Such an individual shall, except as provided in Section 2709, be subject to examination without cost to him by a medical examiner selected by the department, the insurer or self-insurer as the case may be to determine whether the above conditions have been met."

*etc. Com.* (1949) 34 Cal.2d 239, 242 [209 P.2d 602]), and the cause of continuing absence is the trade dispute. (*Ruberoid Co.* v. *California Unemployment Ins. Appeals Board* (1963) 59 Cal.2d 73, 77 [27 Cal. Rptr. 878, 378 P.2d 102].)

■ There are many guideposts for determining whether a trade dispute exists, but it is clear each case must be decided on its own facts. (*John Morrell & Co.* v. *California Unemp. Ins. App. Bd.* (1967) 254 Cal.App. 2d 455, 459 [62 Cal.Rptr. 245].) Similarly, whether an existing trade dispute continues and whether employees voluntarily remain away from work because of such a continuance are determinations that must be made in the context of particular facts.

In *Ruberoid Co.* v. *California Unemployment Ins. Appeals Board, supra,* 59 Cal.2d 73, the court found it was the action of the employer in permanently replacing striking workers that caused employees to remain away from their jobs. Since the workers no longer had jobs to which they could return, their subsequent unemployment was caused by the unavailability of their positions, rather than by the trade dispute.

In this case, unlike *Ruberoid,* not all of the striking workers were permanently replaced; nor were they replaced because they failed to heed a request to return to work. ■ Here, most of the employees were free to return to their jobs;[7] but instead of so attempting, they assumed the position that no one would return unless all were to be reinstated. Since the employer was not obligated to comply with the demand to reinstate even those employees whose positions had been filled,[8] it is apparent the union was bargaining for additional advantages, thereby prolonging the dispute. Under such circumstances it would make little sense to require that the company specify which employees would be rehired in the future.

Inasmuch as there is no evidence petitioners remained away from work other than voluntarily, and since there is no indication they were prevented from returning because their particular positions had been destroyed, it cannot be concluded the company was alone responsible for their

[7]The record shows approximately 85 percent of the jobs remained open.

[8]Under the Labor Management Relations Act (29 U.S.C. § 158), an employer may refuse to reinstate economic strikers where their positions have been filled by permanent replacements (*N.L.R.B.* v. *International Van Lines* (1972) 409 U.S. 48 [34 L.Ed.2d 201, 93 S.Ct. 74]); however, it is an unfair labor practice to refuse to reinstate economic strikers simply because of their participation in a strike (*C. H. Guenther & Son, Inc.* v. *N.L.R.B.* (5th Cir. 1970) 427 F.2d 983). The record indicates that the NLRB rejected an unfair labor practice charge made by the union in this case.

failure to be rehired. Therefore, we conclude the board was correct in its determination petitioners were ineligible for unemployment insurance benefits because of the continuation of the trade dispute.

The disability petitioners also argue the board improperly assumed jurisdiction over their cases since the referee's decision had become final. They assert the board, when assuming jurisdiction on its own motion pursuant to section 1336, is required to comply with the 10-day limitation for appeals made applicable to parties under section 1334.[9]

In pertinent part section 1334 provides: "The decision [of the referee] shall be final unless, within 10 days after mailing of such decision, further appeal is initiated to the appeals board pursuant to section 1336. The 10-day limitation may be extended for good cause." Section 1336 declares: "The director or any party to a decision by a referee may appeal to the appeals board from the decision. The appeals board may on its own motion affirm, modify, or set aside any decision of a referee on the basis of the evidence previously submitted in the case, or may direct the taking of additional evidence. The appeals board may remove to itself or transfer to another referee the proceedings on any claim pending before a referee. The appeals board shall promptly notify the director and the parties to any proceedings of its findings and decision."

■ It is ordinarily not the function of appellate tribunals to undertake a full-scale review of administrative procedures, or to establish time limits, where none have been provided, in the absence of arbitrary or discriminatory treatment by the administrative body. (*United States* v. *Smith* (9th Cir. 1971) 443 F.2d 1278; rehg. den., 451 F.2d 1027.) In this case, however, the court is not called upon to establish a time limit, but instead must determine whether the time limit clearly provided by statute is applicable to action of the administrative body.

In making such a determination the court is aided by rules of statutory construction. " 'Statutes in pari materia are those which relate to the same person or thing, or to the same class of persons or things. In the construction of a particular statute, or in the interpretation of any of its provisions, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law.' " (*Old Homestead Bakery, Inc.* v. *Marsh* (1925) 75 Cal.App. 247, 258 [242 P. 749]; *Shafer* v. *Registered Pharmacists Union* (1940)

_____

[9]Although the employer complied with the 10-day requirement, the requirement was not actually met since the board discharged the company as an improper appellant, and did not assume jurisdiction until three months after the company's appeal.

16 Cal.2d 379, 383 [106 P.2d 403].) The statutes should be construed together if they harmonize and achieve a uniform and consistent legislative purpose. (*Id.* at p. 255; see also *Jordt* v. *State Board of Education* (1939) 35 Cal.App.2d 591 [96 P.2d 809].)

█ In this case it is obvious that sections 1334 and 1336 must be construed together, both because of the general principle and because section 1334 specifically requires reference to section 1336. If section 1334 is read alone, it might appear to be applicable only to the parties and not to the board; but it is clear, when section 1334 is read in light of section 1336, that it must be interpreted as applying also to the board. Section 1336 makes it apparent that initiation of an appeal by the parties or director is not the only means of obtaining review of the referee's decision, for review may also be effected by the board on its own motion. Since review may be achieved either by the parties or director or by the board, it is necessary to construe the words *initiated to* in section 1334 as referring both to appeals by the parties or director and to actions of the board on its own motion.

This is the only reasonable conclusion in light of the provision of section 1334 that the referee's ". . . decision shall be final, unless, within 10 days after mailing of such decision, further appeal is initiated to the appeals board." To conclude "initiated to" refers only to appeals taken by the parties or director would require the conclusion that the decision become final unless the *parties or director* seek modification or reversal. Thus, only the parties or director could prevent finality of the referee's orders—a situation clearly inconsistent with provisions giving the board such power.

Neither can we avoid the inconsistency by deciding the board's action is excepted from the provisions of section 1334. Making the actions of the board exceptional would ignore the statute's clear demand that the referee's decision "shall be final." Disregarding the mandatory language would produce an anomalous result—the referee's order would theoretically be perpetually subject to future action by the board. In face of clear language directed at creating finality in the proceedings, we cannot conclude the Legislature intended to allow the board unlimited time to assume jurisdiction.

Such a conclusion would also be inconsistent with other provisions indicating prompt and definite determinations should be effected; for ex-

ample, the provision requiring the board to render decision within 60 days after filing of the appeal.[10] (§ 1337.)

Since the board did not assume jurisdiction over the disability cases within the 10 days provided for appeal, the referee's decision became final as to petitioners Ross and Helm. These petitioners are entitled to benefits in accord with the referee's determinations.

The disability petitioners also contend section 2677 is unconstitutional in its discrimination against workers who suffer disabilities during a trade dispute. However, since we find Ross and Helm are entitled to disability benefits under the referee's decision, we do not reach this issue.

Insofar as the judgment denies disability benefits, it is reversed with directions to grant a writ of mandate compelling the board to vacate its decision and to reinstate the referee's award. In all other respects the judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

[10]From the record it does not appear the board complied with this limit in rendering either the unemployment or the disability decisions, but the parties did not raise this issue.