BAUGH ET AL., APPELLANTS, *v.* UNITED TELEPHONE CO.
OF OHIO, APPELLEE.
ALBERTE ET AL., APPELLANTS, *v.* UNITED TELEPHONE CO.
OF OHIO, APPELLEE.
ATKINS ET AL., APPELLANTS, *v.* UNITED TELEPHONE CO.
OF OHIO, APPELLEE.

(Nos. 77-932, 77-933 and 77-934—Decided June 28, 1978.)

*Messrs. Green, Schiavoni, Murphy & Haines, Mr. Eugene Green* and *Mr. Ronald G. Macala,* for appellants in each case.

*Messrs. Guarnieri & Secrest* and *Mr. Charles A. Young,* for appellee in each case.

LOCHER, J.  The appellants have presented two propositions of law: (1) The disqualification from unemployment compensaton benefits imposed upon an employee under the "labor dispute" provision of R. C. 4141.29(D)(1)(a) is extinguished when the employee is permanently replaced during the course of that labor dispute, and (2) an employee, unable to return to his job on a full-time basis because of his permanent replacement during the course of a labor dispute, is deemed to be in a lay-off status during those periods when no work from his employer is available and is entitled to unemployment compensation benefits for that time.  Simply phrased, the threshold question is whether the appellants are disqualified under the facts of the instant cause from receiving unemployment compensation benefits because of R. C. 4141.29.

R. C. 4141.29, with respect to an individual's right to receive these benefits, in relevant part, provides:

"(D)  Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

"(1)  For any week with respect to which the administrator finds that:

"(a)  His *unemployment was due to a labor dispute* other than a lockout at any factory, establishment, or other premises located in this or any other state and owned or operated by the employer by which he is or was last employed; *and for so long as his unemployment is due to such labor dispute. * * *"*  (Emphasis added.)

In affirming the trial court's reversal of the Bureau of

Employment Services' decision in each case that appellants could not be disqualified by reason of separation from employment, the Court of Appeals, relying upon this court's prior decisions in *Baker* v. *Powhatan Mining Co.* (1946), 146 Ohio St. 600, and *Leach* v. *Republic Steel Corp.* (1964), 176 Ohio St. 221, found that the reason for appellants' unemployment was a labor dispute and thus they were disqualified, pursuant to R. C. 4141.29(D)(1)(a). The inapplicability of *Baker, supra,* and *Leach, supra,* to the resolution of the instant cause is readily discernible upon an examination of these cases. The issue in *Baker, supra,* although concerning the disqualification provision in G. C. 1345-6, now R. C. 4141.29, was "whether the industrial conditions which prevailed at the mines [production men did not report to work although work was available] where claimants were employed were such as to constitute a strike * * *." Similarly, despite the ultimate application of the disqualification clause in *Leach, supra,* the question therein considered was—in a case where a labor dispute closed the employer's establishment, and the strike is summarily ended by an injunction, is unemployment compensation payable from the end of the strike until the employee is recalled to work after the employer's establishment is readied for a resumption of its operations.

It is thus apparent that the precise question, whether the statutory disqualification pursuant to R. C. 4141.29(D)(1)(a) imposed upon an employee because of a labor dispute terminates when the employer permanently replaces the employee during the course of the labor dispute, has never been addressed by this court.

The disqualification provision of R. C. 4141.29(D)(1)(a) applies only if "unemployment was *due to* a labor dispute." We find that the words *"due to"* mean *"caused by."* They do not mean merely "occurring during the course of." Thus, the element of causation is indispensable. Hence, the vital question is not whether the unemployment occurred in the course of the labor dispute, but whether the unemployment was caused by the labor dispute.

*Skookum Co.* v. *Employment Div.* (1976), 24 Ore. App. 271, 545 P. 2d.914; *Brechu* v. *Rapid Transit Co.* (1957), 20 Conn. Sup. 210, 131 A. 2d 211. In construing an analogous disqualification provision,* the Supreme Court of California has recognized that the section creates a test of proximate causation as to the reason for an applicant's unemployment. *Ruberoid Co.* v. *California Unemployment Ins. Appeals Board* (1963), 59 Cal. 2d 73, 378 P. 2d 102; *Isobe* v. *California Unemployment Ins. Appeals Board* (1974), 12 Cal. 3d 584, 526 P. 2d 528. In *Ruberoid, supra,* the court stated that the loss of benefits must be attributable to a trade dispute which is the *direct cause* of the unemployment.

The Wisconsin Supreme Court has also impliedly recognized the proximate-causation test created in its state's disqualification provision, which, in relevant part, provides: "[a]n employee who has left * * * his employment with an employing unit *because of* a strike or other bona fide labor dispute * * *." (Emphasis added.) Section 108.04(10), Wisc. Stats. In *Marathon Electric Mfg. Corp.* v. *Indus. Comm.* (1955), 269 Wis. 394, 69 N. W. 2d 573, after noting the accepted rule of law that an employer-employee relationship continues to exist during a labor dispute or strike (also, see Annotation 63 A .L R. 3d 88, 120, Section 7 [d]), the court, at page 407, concluded that its state's disqualification provision "should be construed as only applicable to those persons still retaining an employee status who are out of work *due to* a bona fide labor dispute." (Emphasis added.) The Supreme Court of Wisconsin has thus interpreted the disqualification provision to be inapplicable to a loss of employment caused by the discharge of a striking employee during the course

---

*Section 1262 of the California Unemployment Insurance Code provides:

"An individual is not eligible for unemployment compensation benefits, and no such benefits shall be payable to him, if he left his work because of a trade dispute. Such individual shall remain ineligible for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment in which he was employed."

of a labor dispute. *Marathon, supra; Rice Lake Creamery Co.* v. *Indus. Comm.* (1961), 15 Wis. 2d 177, 112 N. W. 2d 202; *Carley Ford, Lincoln, Mercury* v. *Bosquette* (1976), 72 Wis. 2d 569, 241 N. W. 2d 596.

Accordingly, we find that the General Assembly did not intend that the statutory disqualification from unemployment compensation benefits contained in R. C. 4141.29(D) (1)(a) be applicable if, during the course of a *bona fide* labor dispute, the employer terminated the employee status and thereby caused the unemployment. In such an instance, although the labor dispute directly caused the initial unemployment, the statutory disqualification terminated with the severance of the employee status. At that moment in time the direct cause of the unemployment became the act of the employer. From then on the employer's action and not the labor dispute was the proximate cause of unemployment.

Thus, pivotal to the resolution of the instant cause is a determination of whether the employer terminated the appellants' status as employees. While the facts are not in dispute, their legal consequence is in contention. Appellants claim that the employer-employee relationship was severed by their permanent replacement, and thus they are entitled to receive unemployment benefits. Appellee argues that it may lawfully hire permanent replacements and that this does not effectuate a discharge of the striking employees or entitle them to unemployment compensation benefits. After a perusal of the facts, we find that the board's determination that appellants were not disqualified from receiving unemployment compensation benefits was proper. In the instant causes, we are confronted with the affirmative action of the employer in notifying the appellants pursuant to a letter, dated May 25, 1972, not only that their union representatives had been informed of the employer's intention to hire permanent replacements, but further that, if each employee did not report to work on June 1, the immediate hiring of permanent replacements would commence and, if at the end of the strike a replacement occupied the employee's former job, the employee

had no job. A second letter was sent to the employees shortly after the June 1 deadline, informing them that their positions had been filled. The only possible conclusion that can be drawn from these facts is that the employer's severance of the employee status was the proximate cause of appellants' unemployment. As of June 1, 1972, it was the employer's action and not the labor dispute that prevented the appellants from being employed. Indeed, the very action of the appellants is consistent with their assertion of termination as they immediately filed applications for unemployment benefits. Cf. *Rice Lake Creamery Co.* v. *Indus. Comm., supra* (15 Wis. 2d 177). Nor do we find the fact that negotiations between the employer and appellants continued after June 1, 1972, in any manner decisive of the question of the severance of appellants' employee status. This is because such strike activity is ambivalent, in that it may demonstrate an effort to regain the employee status or be construed to reveal appellants' belief their status had not been terminated.

Accordingly, we hold, in a manner consistent with numerous other jurisdictions (*Ruberoid, supra; Marathon, supra; Carley Ford, supra; Knight-Morley Corp.* v. *Michigan Employment Security Comm.* [1958], 352 Mich. 331, 89 N. W. 2d 541; *Skookum Co.* v. *Employment Div., supra* [24 Ore. App. 271]; Annotation, 63 A. L. R. 3d 88, 208, Section 31[b]), that, since the employer's action of permanent replacement prevented any volition on the part of the workers to return to work and since it severed the labor dispute as the cause of unemployment, the statutory disqualification provision of R. C. 4141.29 is inapplicable to bar appellants' right to receive unemployment compensation benefits.

Therefore, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL. C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN and SWEENEY, JJ., concur.