ABRENDTS ET AL., APPELLEES, *v.* OHIO VALLEY
HOSPITAL ASSOCIATION, APPELLANT.

BIANCHINI ET AL., APPELLEES, *v.* GILES, ADMR., OHIO BUREAU OF
EMPLOYMENT SERVICES, APPELLANT.

[Cite as Abrendts *v.* Ohio Valley Hospital Assn. (1985),
17 Ohio St. 3d 11.]

(Nos. 84-232, 84-251 and 84-525—Decided April 24, 1985.)

*Thompson, Hine & Flory, Paul W. Brown, Bricker & Eckler, James J. Hughes, G. Roger King, Craig A. Haddox, Freifield, Bruzzese, Wehr & Moreland* and *William W. Wehr,* for appellant Ohio Valley Hospital Assn.

*Ronald H. Janetzke,* for appellees Ester G. Bianchini et al.

*Anthony J. Celebrezze, Jr.,* attorney general, *Dwight Tillery* and *Howard M. Sanders,* for appellant Administrator, Ohio Bureau of Employment Services.

*Jaffy, Livorno, Kaufmann & Arnett Co., L.P.A.,* and *Stewart R. Jaffy,* urging affirmance for *amicus curiae,* Ohio AFL-CIO.

*Bricker & Eckler, James J. Hughes, G. Roger King* and *Craig A. Haddox,* urging reversal for *amicus curiae,* Ohio Hospital Assn.

CLIFFORD F. BROWN, J. The sole issue in this dispute is what caused the appellees' unemployment. The appellees were never in any dispute with the hospital. The negotiations which continued during the period of late 1978 through early 1979 were between the Ohio Valley Hospital Association and the Ohio Nurses Association. The appellees at all times relevant herein had valid contracts with the hospital. The terms of those contracts forbade a work stoppage by the appellees.

In a recent decision by this court, *Baugh* v. *United Tel. Co.* (1978), 54 Ohio St. 2d 419 [8 O.O.3d 427], this court found that the first issue which must be addressed is what caused the unemployment. The court specifically stated at 422: "This disqualification provision of R.C. 4141.29(D)(1)(a) applies only if 'unemployment was *due to* a labor dispute.' We find that the words '*due to*' mean '*caused by.*' They do not mean merely 'occurring during the course of.' Thus, the element of causation is indispensable. Hence, the vital question is not whether the unemployment occurred in the course of the labor dispute, but whether the unemployment was caused by the labor dispute. * * *"

While we are sympathetic with the unique position of health care facilities faced with a possible strike, we are also sympathetic to employees kept away from their work and work place because of no action or fault on their part. The prudence of the decision of the hospital to shut down is not in question. The hospital administration closed the hospital because it believed that was best for its patients and the hospital. The record is replete with conflicting reasons why such a decision by the hospital board of trustees might have been made, such as the aid to remodeling the hospital, the well-being of the patients, and low patient census at the time. The reasons for closing the hospital in the present case are irrelevant.

The appellees were not parties to any labor dispute. They were merely innocent third parties. Their unemployment was due to the closing of the hospital. The dispute between the employer and the ONA was the cause of their unemployment and they were, therefore, entitled to unemployment compensation.

The Illinois Supreme Court was faced with a situation similar to the

present case. In *Outboard Marine & Mfg. Co.* v. *Gordon* (1949), 403 Ill. 523, 87 N.E. 2d 610, office workers were denied access to a plant when members of a union, to which they did not belong, struck the plant. The Illinois court was asked to determine if the office employees were entitled to unemployment compensation benefits under a statute similar to that in Ohio which denies benefits to persons unemployed as the result of a labor dispute.

The Illinois court did not find the office workers to be part of a labor dispute and therefore found them entitled to unemployment compensation. See, also, *Dept. of Indus. Relations* v. *Drummond* (1941), 30 Ala. App. 78, 1 So. 2d 395, and *Usher* v. *Dept. of Indus. Relations* (1954), 261 Ala. 509, 75 So. 2d 165.

A careful review of the record discloses no investigation by the hospital to determine if the appellees would have refused to work if picket lines had been established by the ONA. Speculation alone exists on that point. The hospital here, just as in *Outboard Marine, supra,* maintained conditions which prevented appellees from working or even being put to the test of whether they would work during the strike by ONA.

The test enunciated in *Baugh, supra,* requires a finding whether the unemployment of appellees was caused by a labor dispute. When the courts below determined that appellees' unemployment was caused by a "lockout," that automatically excluded their unemployment "due to a labor dispute." Therefore, the language in R.C. 4141.29(D)(1)(a) that the "unemployment was due to a labor dispute" does not apply to the appellees. That language applies to employees who voluntarily quit working or strike while a labor dispute with the employer is in progress. The appellees are innocent bystanders who were unemployed because the hospital board of trustees created a "lockout" within the meaning of R.C. 4141.29(D)(1)(a). *Zanesville Rapid Transit, Inc.* v. *Bailey* (1958), 168 Ohio St. 351, 354 [7 O.O.2d 119].

At the time of the closing of the hospital, appellees were not involved in a labor dispute with the hospital. As to these appellees, there was no strike, no work stoppage, no slowdown. In fact, the appellees never expressed any intention to act in concert with the ONA to aid their cause by honoring any picket lines which might later be established by the ONA at the hospital. The only cause of the appellees' unemployment was the cessation of hospital functions by the hospital, *i.e.,* a lockout. The refusal of the board of review to apply the *Baugh* test to the undisputed facts here was error as a matter of law. The common pleas court correctly applied the standard of review to the board of review's decision denying benefits under R.C. 4141.28(O) by reversing the board because its decision was "unlawful, unreasonable, or against the manifest weight of the evidence," and in entering final judgment for the claimants. Because the common pleas court applied the correct standard of review and reached a just determination, the court of appeals was required to affirm.

Appellees correctly reason that the unemployment in question occurred during a labor dispute. Such finding does not support the causal relationship test expressed in *Baugh*. Appellees whose unemployment was directly and proximately caused by a lockout have a right to unemployment benefits pursuant to R.C. 4141.29(D)(1)(a) because then there can be no valid finding that such unemployment was "due to a labor dispute other than a lockout" within the meaning of such statute. Therefore, the judgment of the court of appeals sustaining the award of unemployment compensation to the appellees is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER and DOUGLAS, JJ., concur.

SWEENEY and DOUGLAS, JJ., concur separately.

HOLMES and WRIGHT, JJ., concur in the judgment.

DOUGLAS, J., concurring. I concur in the well-reasoned opinion of the majority. In addition, I think it important to make the following points.

It is uncontested that there was a collective bargaining agreement between the American Federation of State, County and Municipal Employees and the Ohio Valley Hospital Association ("OVH") and also an agreement between the Licensed Practical Nurses and Skilled Hospital Employees Professional and Economic Security Program, Inc. and the OVH. Both agreements were in effect during the periods in question in this case and all of the appellees were covered under one or the other of the agreements. Both agreements contained "no strike clauses." Such clauses prohibit strikes or other types of work stoppages during the pendency of the agreement. The obvious *quid pro quo* for such an agreement by the employees is an agreement by the employer not to engage in a lockout. In the case before us before any strike occurred, if in fact a strike did occur, all of the appellees were laid off by OVH. They were told not to come to work and the cards for admission to OVH's parking lot were changed so the employees could not gain access to the work premises. No employee was admitted by the security force unless authorized by the management of OVH. Under these circumstances, to deny appellees' claims for unemployment benefits would render validly negotiated and bargained for no strike clauses meaningless. To be effective, collective bargaining agreements must be enforced as to employers, as well as employees.

Finally, it should be noted that at the time of the lockout of these employees, there was no strike. A strike is a concerted effort by employees to obtain higher wages or other concessions from their employer by withholding the services of the employees at a specific time. An "intent to

strike" notice is not a strike. In this case OVH completely shut down the hospital after receiving the notice from the Ohio Nurses Association of the intent to strike. While this may have been prudent management and even, in OVH's view, a necessity, nevertheless the fact remains that the layoff of appellees was not caused by a strike. Whether the action of OVH is termed as a "lockup," as OVH contends, or a lockout, as appellees contend — the result is the same.

Without a strike or a picket line appearing, OVH caused appellees to be without work and pay, all without fault of appellees. Accordingly, appellees are entitled to unemployment benefits.

SWEENEY, J., concurs in the foregoing concurring opinion.

HOLMES, J., concurring in judgment. The majority opinion does not address the question of whether an employer's layoff of its employees because of an anticipated strike, of which the employer had been given notice by the employees' union, is a layoff due to a labor dispute. It must be noted that the striking employees who were members of the Ohio Nurses Association did not appeal their denial of unemployment compensation. Here, the issue addressed by the majority is whether, under such circumstances, third-party nonstriking employees may be considered within the framework of the labor dispute, and therefore lawfully excluded from unemployment compensation.

In my view, the majority correctly determines that, in the application of the causal relationship factors between the unemployment and the strike, no action by these employees occasioned the labor dispute and resulting layoff. There was a layoff due to *a* labor dispute, but not the appellees' labor dispute. In this sense the majority reasonably concludes that there had been a lockout as to those nonstriking employees.

I am able to concur in the judgment here in that within the context of the majority's approach, I believe that it is reasonable to conclude that nonstriking employees, such as appellees herein, should not be denied unemployment compensation for a labor situation over which they had no control or with which they were not involved. I believe that it was not the intent of the General Assembly to deny these types of employees their benefits under the law.

WRIGHT, J., concurs in the foregoing opinion.