[No. A032869. First Dist., Div. One. Aug. 18, 1987.]

THE PEOPLE, Plaintiff and Appellant, v.
ANDREW MAYNARD WILLIAMS, Defendant and Respondent.

In re ANDREW MAYNARD WILLIAMS, on Habeas Corpus.

126

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant
Attorney General, Ronald A. Bass and John R. Vance, Jr., Deputy
Attorneys General, for Plaintiff and Appellant.

Malcolm A. Smith, under appointment by the Court of Appeal, for
Defendant and Respondent.

OPINION

**ELKINGTON, J.**—The People have appealed from orders of the superior
court (1) denying reinstatement of a criminal complaint, under Penal Code
section 871.5, against defendant Andrew Maynard Williams (Williams) and
(2) granting Williams's petition for a writ of habeas corpus, thus causing his
return to a federal prison in Missouri without trial of grand theft charges
pending in Alameda County, California.

California, the United States, and other states of the nation are parties to an "Interstate Agreement on Detainers." In California, the agreement is codified as Penal Code section 1389 (section 1389). Section 1389 is lengthy, but its here relevant portions may reasonably be condensed to the following.

It provides that a prison inmate in any of its jurisdictions, against whom criminal charges are pending in another such jurisdiction, may make demand on the latter jurisdiction that he be tried on such charges. Upon such a demand "he shall be brought to trial on such charges within one hundred eighty days" after the demand shall have been received. If he shall *not* have been brought to trial within the 180-day period, "the court shall enter an order dismissing the [charges] with prejudice," any "detainer based thereon shall cease to be of any force or effect," and "the prisoner shall be returned [from the receiving jurisdiction] to the sending state," or jurisdiction.

And as is perhaps better known, Penal Code sections 859, 859a, and 859b provide for the prompt "arraignment" before a magistrate of one charged with a felony, and for dismissal of the charges if the preliminary examination is set or continued more than 10 or 60 days, depending, respectively, on whether the subject is, or is not, in *custody* from the date of his arraignment or plea. (See § 859b.) (Criminally charged defendants rarely seek relief thereunder, for upon such a dismissal the charges may be refiled.)

While a federal prisoner in Springfield, Missouri, defendant Williams had pending against him in Alameda County, California, four charges of grand theft. He made demand, received *November 2, 1984,* by the District Attorney of Alameda County, that he be tried on that county's charges within 180 days, as provided by the agreement on detainers (section 1389). He was brought to Alameda County, California, for trial on the charges there pending. There having been no preliminary examination on the charges, it became necessary to bring Williams before a magistrate for such a preliminary examination (Pen. Code, §§ 806, 858-883).

On Williams's first California court appearance *January 11, 1985,* before a magistrate, he was not represented by counsel and the case was continued to January 15, 1985, "to get your attorney."

On January 15, 1985, Williams appeared before Municipal Court Judge Conger with an attorney, who announced, "I would like to make a *special appearance.*" But the attorney then asked that the case *be continued* "as I look at the mountain of discovery to be obtained." He also requested, and obtained, the magistrate's order that Williams be *permitted* "to wear his own personal clothes" for court appearances. He then stated that there was *"no time problem,"* that Williams was "willing to *waive his time, "* and that

*"we will waive formal arraignment."* (Our italics.) As a consequence Williams was *not* formally arraigned. The case was then continued, as requested by the attorney, to January 23, 1985.

On January 23, 1985, Williams appeared before the same magistrate with the same attorney, who once more stated that he "made a *special appearance,* " but that "there are two matters I would like to bring up today." One such matter was the magistrate's aid in obtaining discovery and certain "legal materials" of Williams; the other was a request for aid in fixing his county paid fee, and *"putting this case over to another time* [our italics] without entering a plea or having me make a general appearance." The matter as requested, was continued, this time to January 28, 1985.

On January 28, 1985, the same attorney appearing before a different magistrate announced that he was again "making another *special appearance* with Mr. Williams." The case was *again continued,* apparently at the attorney's request, to February 4, 1985. On that day it was *again continued* to February 11, 1985, "to see if [the attorney] is going to be representing Mr. Williams or not."

██ (We note at this point that despite the attorney's insistence that he had made only a *"special appearance,"* he had as a *matter of law* made a *"general appearance."*) ██ " 'Whether an appearance is general or special is determined by the character of the relief sought and not by the intention of the party that it shall or shall not operate as a general or special appearance. The statement of a defendant or party that he is making a special appearance is not necessarily conclusive. The test is—Did the party appear and object only to the consideration of the case or any procedure in it because the court had not acquired jurisdiction of the person of the defendant or party? If so, then the appearance is special. If, however, he appears and asks for any relief which could be given only to a party in a pending case, or which itself would be a regular proceeding in the case, it is a general appearance regardless of how adroitly, carefully or directly the appearance may be denominated or characterized as special. . . .' " (*Judson* v. *Superior Court* (1942) 21 Cal.2d 11, 13 [129 P.2d 361], overruled on other grounds in *Goodwine* v. *Superior Court* (1942) 63 Cal.2d 481, 484 [47 Cal.Rptr. 201, 407 P.2d 1].) ██ Here the attorney made no complaint of the magistrate's jurisdiction, and he sought relief obtainable only because of such jurisdiction. *Significantly,* as noted, the attorney in the course of a *general appearance* had said that there was *"no time problem,"* had *"waived time"* and had *"waived formal arraignment."* ██ Moreover, we note that Williams speaks in his briefs, as that it was *his attorney* who had made a general or special appearance. The true issue, of course, is whether Williams had made such an appearance. By his demand for trial in

California on charges there pending he had manifestly invoked, and submitted to, the jurisdiction of that state's courts. And, "in general, it is well established that the power to control judicial proceedings is vested exclusively on counsel." *Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 781 [126 Cal.Rptr. 251, 543 P.2d 619].)

The next appearance of Williams before yet another magistrate was *not* February 11, 1985, but was instead on *March 18, 1985*. On that date, *another attorney* was representing Williams. The proceedings were continued to the next day when Williams's preliminary examination was set for May 1, 1985.

On the day set for the preliminary examination, *May 1, 1985,* Williams's then attorney announced that he did "not waive the 180-day requirement of the interstate agreement on detainers."

(It will be noted that the attorney's announcement was withheld until precisely 180 days had elapsed after receipt of Williams's trial demand by the district attorney. And of course the 10-day and 60-day limits of Pen. Code, § 859b had long since expired.)

From that point on it appears that there was much unreported activity on the case, between the magistrate and counsel, resulting in stipulations such as "that a substantial part of the court's time this morning has been spent on this case though we have not come into court." And there was talk of plea bargaining, resumption of the preliminary examination, and waivers, but none relating to Penal Code sections 859, 859a, 859b, or 1389.

Finally on June 7, 1985, Williams's attorney moved for a *dismissal* (1) "on the grounds that Mr. Williams was never properly arraigned in this matter and there were excessive delays in the early stages of this and that there appears that there was never a proper instruction and arraignment of Mr. Williams [and, (2) because] the IAD [Interstate Agreement on Detainers] provides [for such] a dismissal of the charges . . . with prejudice."

The magistrate granted the motions and ordered the action against Williams dismissed. However, seemingly doubtful of its validity, he directed that the dismissal be stayed.

The People thereupon, as noted, moved the superior court to reinstate the complaint, as permitted by Penal Code section 871.5. Contemporaneously with that motion, Williams petitioned the superior court for a writ of habeas corpus seeking his immediate return to the federal prison in Missouri.

The superior court *denied* the People's motion, and *granted* the petition of Williams for the writ of habeas corpus upon which he has now been returned to the Missouri federal prison.

The People's appeals are taken from those rulings.

We shall reverse the rulings of the superior court for the reasons we now state.

■ Initially, it is noted that there is a strong public policy that persons who commit crimes in this state be prosecuted and punished therefor. (Pen. Code, *passim*.)

In the superior court, and here, Williams has argued three contentions. *First,* he insists that he was denied a *prompt arraignment* and preliminary examination before the magistrate as mandated by Penal Code sections 859, 859a, and 859b. Secondly, he argues that he was denied the *timely* trial required by Penal Code section 1389. And finally, he insists that we address the issues raised in his *Section 1389* superior court petition for a writ of habeas corpus whether or not such issues be now *moot.*

■ The first two of the contentions are patently invalid.

We iterate that Williams's first attorney, in the course of his *"general appearance"* (see *Judson* v. *Superior Court, supra,* 21 Cal.2d 11, 13), stated that Williams was willing to *"waive his time,"* that *"we will waive formal arraignment,"* and that there was *"no time problem."* (Our italics.)

■ Penal Code sections 859, 859a, and 859b are in pari materia. ■ " ' "Statutes in pari materia are those which relate to the same person or thing, or to the same class of persons or things. In the construction of a particular statute, or in the interpretation of any of its provisions, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law." ' " *(Isobe* v. *Unemployment Ins. Appeals Bd.* (1974) 12 Cal.3d 584, 590 [116 Cal.Rptr. 376, 526 P.2d 528].) ■ With this rule in mind, we observe the holding of *Blake* v. *Superior Court* (1980) 108 Cal.App.3d 244, 247, 248 [166 Cal.Rptr. 470], that Penal Code section 859b (and its pari materia statutes, §§ 859 and 859a) apply *"only to those defendants in custody by reason of the pending charges"* in the receiving state, here California. Where, as here, the accused is already in custody in the sending state or jurisdiction by reason of a prior conviction and sentence, he is not "in custody" within the meaning of those statutes. "[T]he phrase 'whenever the defendant is in custody' as used in section 859b must be applied only to those defendants in

custodial confinement *solely* [our italics] attributable to the charges which are the subject of the preliminary hearing."

We consider now Williams's insistence, that we address the issues raised in his superior court section 1389 petition for a writ of habeas corpus whether or not such issue be now moot.

■ " 'It is now *established law* that where . . . issues on appeal affect the general public interest and the future rights of the parties, and there is reasonable probability that the same questions will again be litigated and appealed, an appellate court may, *although the appeal be [moot and] subject to dismissal, nevertheless adjudicate the issues involved.*' " (Our italics. *People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 468 [89 Cal.Rptr 290]; and see 9 Witkin, Cal. Procedure (3d ed. 1985) § 526, pp. 509-513.)

■ It is noted that the relief sought by Williams in the superior court by way of habeas corpus was that the court "issue a writ commanding the sheriff of Alameda County to deliver custody of petitioner forthwith to the warden of the U.S. Medical Center, Springfield, Missouri." It is significant, as will soon be seen, that he had thereby *requested his return* forthwith, to the Missouri federal prison.

The superior court, as above noted, thereafter ordered: "Petition for writ of habeas corpus is granted."

The superior court's order has now been executed, and Williams has purportedly attained all of the relief he sought by his habeas corpus petition. And according to Williams's briefs: "Following the superior court's decision . . . the defendant herein was returned to federal custody without having a trial in California. . . . Because defendant was returned to federal custody, he cannot now be tried on the charges that underlie this case. Even if this court were to rule in favor of the People, a criminal prosecution cannot proceed."

Here also we find that the superior court erred. Although the issue appears to be one of first impression in California, we find persuasive authority elsewhere, in *United States* v. *Black* (9th Cir. 1979) 609 F.2d 1330, *Gray* v. *Benson* (10th Cir. 1979) 608 F.2d 825, and *Florida* v. *Grizzell* (Fla.App. 1982) 399 So.2d 1091. These cases were, as we are here, concerned with the Interstate Agreement on Detainers. They hold that by voluntarily requesting by habeas corpus application or otherwise, one's return to the jurisdiction of his imprisonment, i.e., the sending state, he has waived such rights as are here insisted upon by Williams. These holdings are reasonable, and we apply them.

██ But, for yet other reasons we conclude that the supeior court's rulings must be reversed.

We are of the opinion that the successive magistrates and the superior court were manipulated by Williams's transparent ploy.

As in Mr. Justice Harlan's dissent, uninvolved in conflict with the majority opinion, in *Douglas* v. *California* (1963) 372 U.S. 353, 367, fn. 4 [9 L.Ed.2d 811, 820, 83 S.Ct. 814]: "A reading of the record leaves little doubt that petitioners' . . . efforts . . . were designed to delay the proceedings and, in all likelihood, to manufacture an appealable issue." And: " ' "It is at once apparent that the trial court must in the nature of things have some control over such matters, to the end that judicial business may be dispatched in an orderly manner. . . ." ' " *People* v. *Gaynor* (1963) 223 Cal.App.2d 575, 582 [36 Cal.Rptr. 219].) "[A] criminal defendant may not juggle his constitutional rights in an attempt to evade prosecution. He may not . . . force a trial court to [err] in the hope that a reviewing court will find that the trial court has made the wrong choice. 'We cannot tolerate such bad faith and we are not constitutionally required to do so. . . .' " *(People* v. *Floyd* (1970) 1 Cal.3d 694, 707 [83 Cal.Rptr. 608, 464 P.2d 64], overruled on other grounds in *People* v. *Wheeler* (1978) 22 Cal.3d 258, 287 [148 Cal.Rptr. 890, 583 P.2d 748].)

For these several reasons, we sustain the appeals of the People.

The orders denying the People's motion to reinstate the complaint, and granting the petition for a writ of habeas corpus, are, and each is, reversed.

Holmdahl, J., concurred.

**RACANELLI, P. J.**—I concur in the result only.

A petition for a rehearing was denied September 17, 1987. Racanelli, P. J., was of the opinion that the petition should be granted. Respondent's petition for review by the Supreme Court was denied December 17, 1987.