[Nos. F019643, F019921. Fifth Dist. June 30, 1994.]

GOLDEN STATE HOMEBUILDING ASSOCIATES et al., Plaintiffs and Appellants, v.
CITY OF MODESTO et al., Defendants and Appellants.

602

**COUNSEL**

Motschiedler, Michaelides & Wishon and C. William Brewer for Plaintiffs and Appellants.

Michael D. Milich, City Attorney, Laury L. Dowd and Roland R. Stevens, Deputy City Attorneys, Michael H. Krausnick, County Counsel, and E. Vernon Seeley, Assistant County Counsel, for Defendants and Appellants.

## OPINION

BUCKLEY, J.—In deciding this case, we are compelled to interpret Government Code[1] section 65961, which limits the power of a city or county to base its issuance of building (or equivalent) permits for a residential subdivision upon conditions it could have "lawfully imposed" on a previously approved tentative map. In particular, we are asked to decide whether section 65961 permits a city to condition issuance of building permits on payment of development impact fees which had not yet been established when the city approved the tentative map, that is, whether the city could have "lawfully imposed" a condition on the map requiring payment of the fees even though the fees and authorization for them did not then exist. As we shall explain, the city could not have lawfully imposed the condition on the tentative map and therefore was not barred by section 65961 from imposing it later on the building permits.

### FACTS

On April 6, 1987,[2] the City of Modesto (City) approved an application for a "vesting tentative map" for a residential subdivision known as Dry Creek Meadows, thereby conferring on its developers a vested right "to proceed with development in substantial compliance with the ordinances, policies, and standards" in effect earlier when the City determined the map application was complete. (§ 66498.1.) At that time, the developers included the plaintiffs, Golden State Homebuilding Associates (Golden State) and Alta Pacific Housing Partners II (Alta Pacific).[3] Golden State owned a 14.75-acre parcel consisting of 90 lots in what was known as Dry Creek Meadows No. 8; Alta Pacific owned a 24.136-acre parcel consisting of 95 lots in Dry Creek Meadows No. 4.

The City's approval of the vesting tentative map was subject to numerous conditions, none of which, however, required Golden State or Alta Pacific

---

[1]All future statutory references are to the Government Code.

[2]The city approved the application again on May 12, 1987, subject to certain modifications not relevant to this appeal.

[3]At some point prior to trial, Alta Pacific sold some of its lots in Dry Creek Meadows No. 4, including its 25 lots involved in this appeal, to Grant Homes which, in turn, assigned to Alta Pacific the right to seek reimbursement of the impact fees paid with respect to development of those lots.

(Developers) to pay impact fees. Indeed, the City did not establish such fees, which it labeled "Capital Facilities Fees," until June 23, 1987, about six weeks later. Subsequently, the City also agreed to collect comparable "Public Facilities Fees" for the County of Stanislaus (County), which fees were established by the County on December 19, 1989.

The City approved final subdivision maps for Dry Creek Meadows Nos. 4 and 8 in February and April of 1989, respectively. In 1992, more than three years after the final map was approved and five years after the tentative map was approved, Golden State and Alta Pacific applied to the City for the first of their building permits, for one unit and twenty-five units, respectively. By then, their vested rights under section 66498.1 had expired.[4] Consequently, the City refused to issue the permits unless Developers paid capital and public facilities fees of $5,275 and $3,431 per unit, respectively. Developers paid the fees under protest (§ 66020) and brought the present action.[5]

In their first amended complaint and petition, Developers sought: a declaration that imposition of the fees violated section 65961;[6] a writ of mandate ordering the City to issue the permits and refund fees already paid;

---

[4]Section 66498.1, subdivision (d) provides in pertinent part: "The rights conferred by this section shall expire if a final map is not approved prior to the expiration of the vesting tentative map."

[5]The County adopted its own facilities fees on December 19, 1989. As this appeal is taken by both the City and County, any reference to the City shall include the County and vice versa.

[6]Section 65961 provides in part: "Notwithstanding any other provision of law, upon approval or conditional approval of a tentative map for a subdivision of single- or multiple-family residential units, or upon recordation of a parcel map for such a subdivision for which no tentative map was required, during the five year period following recordation of the final map or parcel map for the subdivision, a city, county, or city and county shall not require as a condition to the issuance of any building permit or equivalent permit for such single- or multiple-family residential units, conformance with or the performance of any conditions that the city or county could have lawfully imposed as a condition to the previously approved tentative or parcel map. Nor shall a city, county, or city and county withhold or refuse to issue a building permit or equivalent permit for failure to conform with or perform any conditions that the city, county, or city and county could have lawfully imposed as a condition to the previously approved tentative or parcel map. However, the provisions of this section shall not prohibit a city, county, or city and county from doing any of the following: [¶] (a) Imposing conditions or requirements upon the issuance of a building permit or equivalent permit which could have been lawfully imposed as a condition to the approval of a tentative or parcel map if the local agency finds it necessary to impose the condition or requirement for any of the following reasons: [¶] (1) A failure to do so would place the residents of the subdivision or of the immediate community, or both, in a condition perilous to their health or safety, or both. [¶] (2) The condition is required in order to comply with state or federal law. [¶] (b) Withholding or refusing to issue a building permit or equivalent permit if the local agency finds it is required to do so in order to comply with state or federal law. [¶] (c) Assuring compliance with the applicable zoning ordinance."

and an injunction prohibiting imposition of the fees on future permits. They also sought attorney fees and litigation expenses pursuant to section 1021.5 of the Code of Civil Procedure.[7]

The parties next submitted to the court a stipulation setting forth the undisputed facts of the case essentially as recounted above. In a separate stipulation, they agreed "that the case will proceed on an expedited basis on the focused issue of the application of Government Code § 69561 to the facts of this case consistent with the narrowed causes in the First Amended Petition and Complaint; [and] that the Declaratory Relief cause will be addressed by the court specifically with respect to those twenty-six lots that are currently before the court as having met the criteria of Government Code § 66020 . . . ."

Following a hearing, the court issued a decision granting Developers' writ petition. It held imposition of the fee condition on Developers' building permits violated section 65961. Notwithstanding the parties' prior stipulation limiting the hearing to that issue, and the lack of any evidence on other issues, the court also held imposition of the fees was an unconstitutional ex post facto law; it constituted an illegal special tax; it violated due process; and the City and County were collaterally estopped (apparently to assert a right to impose the fees) by this court's earlier decision in *Kaufman & Broad of Northern Cal., Inc.* v. *City of Modesto* (Cal.App.).[8]

The City and County promptly moved to set aside the decision on the ground it went beyond the scope of the hearing. They also challenged the court's conclusion with respect to the collateral estoppel effect of *Kaufman & Broad*. After another hearing, the court granted the motion in part. It agreed to delete any reference to a special tax and to modify its decision in certain other respects.

Ultimately, the court awarded judgment in favor of Developers, granting declaratory relief and ordering a peremptory writ of mandate to issue with

---

[7]At the time of trial, Code of Civil Procedure section 1021.5 provided in part: "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, either pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

[8]Our opinion, *Kaufman & Broad of Northern Cal., Inc.* v. *City of Modesto* (F015916) (hereafter *Kaufman & Broad*), petition for review denied on April 16, 1992, was ordered depublished by the Supreme Court. It is cited in the ensuing discussion only where pertinent to the question of collateral estoppel. (Cal. Rules of Court, rule 977(b)(1).)

respect to the 26 building permits in dispute. It declared imposition of the fees was an unconstitutional ex post facto law; violated section 65961; violated due process (on two different grounds); and was barred by our earlier decision in *Kaufman & Broad.* The City and County have timely appealed from the judgment and Developers have cross-appealed (challenging limitation of the judgment to the 26 building permits).[9]

DISCUSSION

1. *The Subdivision Map Act.*

The Subdivision Map Act (Act) (§ 66410 et seq.) empowers a local agency (i.e., a city, county or city and county) to regulate and control the design and improvement of subdivisions. (§ 66411; see generally, Cal. Subdivision Map Act Practice (Cont.Ed.Bar 1987); Curtin, Cal. Land Use and Planning Law (14th ed. 1994) ch. 5.) A subdivision is broadly defined to include virtually any division of land for the present or future purpose of sale, lease, or financing. (§ 66424.) Each local agency *must* by ordinance regulate subdivisions for which a tentative and final map are required, meaning generally those which create five or more parcels. (§§ 66411, 66426.)

The initial operative document in the regulatory process is a tentative map. Its contents are largely governed by local ordinance but must set out the design of the proposed subdivision and the existing conditions in and around it. (§ 66424.5.) When a tentative map is filed, the local agency is required to act on it within the period specified by the Act by approving, conditionally approving, or denying it. (§§ 66452.1, 66452.2.) To be approved, the tentative map must, among other things, be consistent with the local general plan or an existing specific plan. (§§ 66473.5, 66474.) Once approved or conditionally approved, the map remains in effect for 24 months, but may be extended for a period not to exceed an additional 12 months. (§ 66452.6.)

The final map, in a form dictated in some detail by the Act (§ 66433 et seq.), must be filed prior to expiration of the tentative map. (§§ 66452.6, subd. (d), 66456) Its approval necessarily follows if it satisfies all requirements applicable to the subdivision when the tentative map was approved (§§ 66458, 66473) and it is in substantial compliance with the tentative map. (§ 66474.1; *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644,

---

[9]A separate appeal, taken by Developers from the court's denial of their request for attorney fees, has been withdrawn by Developers.

655-656 [150 Cal.Rptr. 242, 586 P.2d 556].) The final map, once approved, must be filed for recordation. (§§ 66429, 66464-66468.)

Approval of the tentative or final map, however, does not necessarily confer on a developer a vested right to complete the subdivision free from new requirements. Under the judicially developed doctrine of vested rights or so-called "common law" vested rights, upon certain circumstances, our courts have recognized such a right based on the principle of equitable estoppel. However, the right generally has been held to arise only upon issuance of a building permit or other final discretionary approval, and is limited in scope to the terms of the permit itself. (Cf. *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 [132 Cal.Rptr. 386, 553 P.2d 546]; Cal. Subdivision Map Act Practice, *supra*, §§ 6.27-6.28, pp. 145-148.) Thus, absent equitable estoppel, a local agency may change zoning or adopt new ordinances well into the development process despite a developer's prior commitment of substantial resources to a project. (Cf. *Avco* at p. 793.)

2. *Section 65961.*

■ In 1982, the Legislature enacted sections 65961 and 66474.2[10] to provide greater protection to developers than is available under this judicially developed doctrine of vested rights. The legislation was intended "to prevent local agencies from imposing new exactions under their police power following tentative map approval . . . ." (Cal. Subdivision Map Act Practice, *supra*, § 6.30, p. 149.) Section 66474.2 generally provides that a local agency, in deciding whether to approve or disapprove a tentative map, may apply only those "ordinances, policies, and standards" in effect on the date the agency determined the map application was complete.[11] Section 65961 prohibits a local agency under certain circumstances from imposing a

---

[10]Both sections 65961 and 66474.2, as originally enacted, were repealed by their own terms effective January 1, 1989. (Stats. 1982, ch. 1449, §§ 1, 2, pp. 5528-5530.) Both were later amended prior to that date to remove their self-repealing provisions. (Stats. 1987, ch. 193, § 1, p. 1156 [§ 65961]; Stats. 1988, ch. 548, § 1, p. 2009 [§ 66474.2].)

[11]Section 66474.2 provides: "(a) Except as otherwise provided in subdivision (b) or (c), in determining whether to approve or disapprove an application for a tentative map, the local agency shall apply only those ordinances, policies, and standards in effect at the date the local agency has determined that the application is complete pursuant to Section 65943 of the Government Code. [¶] (b) Subdivision (a) shall not apply to a local agency which, before it has determined an application for a tentative map to be complete pursuant to Section 65943, has done both of the following: [¶] (1) Initiated proceedings by way of ordinance, resolution, or motion. [¶] (2) Published notice in the manner prescribed in subdivision (a) of Section 65090 containing a description sufficient to notify the public of the nature of the proposed change in the applicable general or specific plans, or zoning or subdivision ordinances. [¶] A local agency which has complied with this subdivision may apply any ordinances, policies, or

condition on a building permit (or its equivalent) which it could have "lawfully imposed" on a previously approved tentative map.

In the present case, the City approved the vesting tentative map for Dry Creek Meadows before City and County impact fees were established. Therefore, the City and County argue section 65961 does not apply because they could not have "lawfully imposed" a condition on the tentative map requiring Developers to pay the fees.[12]

■ "Our analysis starts from the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. . . . In determining intent, we look first to the words themselves. . . . When the language is clear and unambiguous, there is no need for construction. . . . When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154], citations omitted.)

"[T]he provision must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].)

standards enacted or instituted as a result of those proceedings which are in effect on the date the local agency approves or disapproves the tentative map. [¶] (c) If the subdivision applicant requests changes in applicable ordinances, policies or standards in connection with the same development project, any ordinances, policies or standards adopted pursuant to the applicant's request shall apply."

[12]Initially, we reject Developers' contention the City and County are collaterally estopped by our earlier decision in *Kaufman & Broad* to dispute application of section 65961 to the present situation. In *Kaufman & Broad*, unlike here, the developer's vesting tentative map application was approved *after* the city had established capital facilities fees for new developments. Although it initially sought to impose a condition requiring the developer to pay the fees at the rate in effect when it issued building permits, the city subsequently withdrew the condition and approved the map without it. By the time the developer applied for the first of its building permits some 15 months later, the city had substantially increased the amount of the fees. We held it was barred by section 65961 from demanding the higher fees because it could have approved the tentative map subject to the fee condition but failed to do so. We did not decide the central question posed here: whether the city could have lawfully imposed a tentative map condition requiring payment of impact fees which had yet to be established. Consequently, the doctrine of collateral estoppel does not apply. (*Bronco Wine Co.* v. *Frank A. Logoluso Farms* (1989) 214 Cal.App.3d 699, 709 [262 Cal.Rptr. 899].)

Statutory interpretation is a question of law upon which an appellate court exercises its independent judgment where, as here, the material facts are undisputed. (*People* v. *Taylor* (1992) 6 Cal.App.4th 1084, 1090-1091 [8 Cal.Rptr.2d 439].)

 The City and County base their argument on the premise that although section 65961 prohibits them from imposing a condition on a building permit which they could have imposed on a previously approved tentative map, it does authorize them to do the converse, i.e., to condition issuance of the building permit on a requirement they could *not* have lawfully imposed when they approved the tentative map. This construction, however, appears to conflict with the evident intent of the Legislature to limit a local agency's power to impose new exactions after it has approved a tentative map. It would also create the anomalous result that a local agency which is slow to adopt development regulations retains more freedom to impose them than one which adopts the same regulations early in the development process. However, we are charged only to interpret what is written, not to question the wisdom of the statute as enacted.

Senate Bill No. 1786, the 1982 legislation enacting sections 65961 and 66474.2, was approved by unanimous vote of both the Senate and Assembly. (Off. of Planning and Research, Enrolled Bill Rep. on Sen. Bill No. 1786 (1981-1982 Reg. Sess.), Sept. 17, 1982.) According to its author, the two statutes were intended to serve the following purposes: "Freezing the tentative map approval standards will provide equity by insuring there are no mid-stream changes. Prohibition of additional conditions to issue the building permit will insure that all appropriate issues are considered during the tentative and final map process." (Sen. Floor Statement by Sen. John Foran.) Likewise, an analysis of the bill by the Senate Republican Caucus concluded section 65961 would restrict the power of a local agency to impose "additional conditions" when it issues a building permit. These comments, although not necessarily dispositive on the subject of legislative intent, reflect an intent similar to that suggested by other provisions of the Act. (See generally on the importance of legislation history in statutory interpretation, 7 Witkin, Summary of Cal. Law (9th ed. 1988) § 97, pp. 150-151, and cases cited therein.)

Section 66474.2, the companion statute to section 65961, mandates that a local agency, "in determining whether to approve or disapprove an application for a tentative map, . . . shall apply only those ordinances, policies, and standards in effect at the date the local agency has determined that the application is complete . . . ." As a practical matter, the decision to approve or disapprove the map application includes the decision to *conditionally*

approve it. Thus, subject to certain limitations, section 66474.2 effectively prohibits a local agency considering a tentative map application from imposing a condition which is not consistent with an "ordinance, policy, or standard" in effect (or at least formally instituted) when the completed application was filed. More importantly for the purposes of this discussion, it suggests an intent to also limit the agency's power to impose such a condition later in the development process.

A similar purpose appears in section 66474.1 which provides: "A legislative body shall not deny approval of a final or parcel map if it has previously approved a tentative map for the proposed subdivision and if it finds that the final or parcel map is in substantial compliance with the previously approved tentative map." This purpose has been characterized as follows: ". . . to confirm that the date when the tentative map comes before the governing body for approval is the crucial date when that body should decide whether to permit the proposed subdivision. Once the tentative map is approved, the developer often must expend substantial sums to comply with the conditions attached to that approval. These expenditures will result in the construction of improvements consistent with the proposed subdivision, but often inconsistent with alternative uses of the land. Consequently it is only fair to the developer and to the public interest to require the governing body to render its discretionary decision whether and upon what conditions to approve the proposed subdivision when it acts on the tentative map. Approval of the final map thus becomes a ministerial act once the appropriate officials certify that it is in substantial compliance with the previously approved tentative map. [Citations.]" (*Youngblood* v. *Board of Supervisors, supra,* 22 Cal.3d at pp. 655-656 [interpreting Bus. & Prof. Code, former § 11549.6 prior to its recodification as Gov. Code, § 66474.1].) Section 65961 has been cited along with sections 66474.1 and 66474.2 as being among those which are "designed to safeguard the investments and expectations of developers." (*City of West Hollywood* v. *Beverly Towers, Inc.* (1991) 52 Cal.3d 1184, 1190 [278 Cal.Rptr. 375, 805 P.2d 329].) To the extent possible, it should be construed so as to harmonize it with these other related laws. (*Isobe* v. *Unemployment Ins. Appeals Bd.* (1974) 12 Cal.3d 584, 590 [116 Cal.Rptr. 376, 526 P.2d 528].) However, Developers propose to do this in a way which creates significant problems of its own.

Developers would have us interpret section 65961 to prohibit a local agency from imposing any condition on a building permit which it had not previously imposed on the tentative map. However, they fail to explain why, if their proposed interpretation is correct, the Legislature felt it necessary to enact vesting tentative map statutes two years later to accomplish essentially the same result.

The vesting tentative map statutes (§ 66498.1 et seq.), adopted in 1984, were intended to offer developers "a degree of assurance, not previously available, against changes in regulations." (2 Longtin's Cal. Land Use (2d ed. ·1987) § 6.50[2], p. 700.) Section 66498.1 permits a developer to file a "vesting tentative map" whenever a tentative map would otherwise be required.[13] Approval of the vesting tentative map entitles the developer, subject to certain limitations, to proceed with the project "in substantial compliance with the ordinances, policies, and standards described in Section 66474.2," that is, with those in effect when the map application was determined to be complete. (See *Bright Development* v. *City of Tracy* (1993) 20 Cal.App.4th 783, 792-793 [24 Cal.Rptr.2d 618].)

Thus, for all intents and purposes pertinent here, section 66498.1 does the same thing Developers claim section 65961 does: it limits a local agency's right to impose requirements on a developer after tentative map approval unless those requirements are based upon "ordinances, policies, or standards" in effect when the vesting tentative map application was determined to be complete. Under their proposed construction, section 66498.1 differs from section 65961 only in that it affords protection to developers for a shorter period of time after recordation of the final map (one to two years as opposed to five years.) In other words, Developers' interpretation of section 65961, if correct, would render section 66498.1 superfluous; if section 65961 means what Developers claim it does, there would have been no apparent reason for the Legislature to enact section 66498.1 in 1984, or to amend section 65961 in 1987 to prevent it from being repealed by its own terms. We cannot presume the Legislature engaged in idle acts. (*Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241].)

[13]Section 66498.1 provides: "(a) Whenever a provision of this division requires that a tentative map be filed, a vesting tentative map may instead be filed. [¶] (b) When a local agency approves or conditionally approves a vesting tentative map, that approval shall confer a vested right to proceed with development in substantial compliance with the ordinances, policies, and standards described in Section 66474.2. However, if Section 66474.2 is repealed, that approval shall confer a vested right to proceed with development in substantial compliance with the ordinances, policies, and standards in effect at the time the vesting tentative map is approved or conditionally approved. [¶] (c) Notwithstanding subdivision (b), the local agency may condition or deny a permit, approval, extension, or entitlement if it determines any of the following: [¶] (1) A failure to do so would place the residents of the subdivision or the immediate community, or both, in a condition dangerous to their health or safety, or both. [¶] (2) The condition or denial is required, in order to comply with state or federal law. [¶] (d) The rights conferred by this section shall expire if a final map is not approved prior to the expiration of the vesting tentative map. If the final map is approved, the rights conferred by this section shall be subject to the periods of time set forth in subdivisions (g) and (h) of Section 66452.6. [¶] (e) Consistent with subdivision (b), an approved or conditionally approved vesting tentative map shall not limit a local agency from imposing reasonable conditions on subsequent required approvals or permits necessary for the development and authorized by the ordinances, policies, and standards described in subdivision (b)."

In sum, section 65961 appears to have been intended by the Legislature to confer a right on a developer—a right narrower in scope than the vested right conferred by sections 66498.1 et seq.—which nonetheless protects the developer against having to meet new requirements imposed after approval of its tentative map. It remains to be determined what the limits of that right are. The right proposed by the City and County incorporates a significant exception to the protection generally afforded developers under the doctrine of vested rights. However, no other plausible interpretation of section 65961 appears which gives effect to the "lawfully imposed" language of the statute. We should seek to avoid a construction of the statute which would make some portions of it surplusage. (*People* v. *Woodhead, supra*, 43 Cal.3d at p. 1010.) Ignoring the language, as Developers propose we do, would make the right so broad as to exceed the scope of the later-enacted vesting rights statutes.

The one published decision to have discussed section 65961, albeit in dictum, supports the interpretation urged by the City and County. In *Laguna Village, Inc.* v. *County of Orange* (1985) 166 Cal.App.3d 125 [212 Cal.Rptr. 267], the county, after approving Laguna's tentative map in 1978, adopted an ordinance requiring payment of school facilities fees upon issuance of building permits for new residential development within attendance areas found to be overcrowded. Laguna's proposed development was in a school district later designated as such an area. Consequently, the county refused to issue building permits unless Laguna agreed to pay the fees. In its action to avoid this requirement, Laguna argued the statutory scheme authorizing school facilities fees (§ 65970 et seq.) did not contemplate such a result. As additional support for its argument, Laguna pointed to section 65961 as indicative of the Legislature's intent that a building permit could not be conditioned upon payment of the fees. The court rejected this claim on three grounds. It noted section 65961, adopted in 1982, was prospective only and therefore did not apply to Laguna's building permits. It also noted section 65961 recognizes an exception permitting imposition of a condition to comply with state or federal law. Most significantly for the purposes of this discussion, it noted Laguna's tentative map was approved before the fee ordinance was adopted and the necessary overcrowding determination was made, and so concluded (without further analysis) that the county could not have lawfully imposed a fee condition on the tentative map. (166 Cal.App.3d at p. 131.)

Section 65961 can reasonably be construed to apply to tentative map conditions which may be "lawfully imposed" pursuant to section 66474.2; conditions which are based upon "ordinances, policies, or standards" in

effect at the time the tentative map application was determined to be complete. Because it had no established fee policy when the map application for Dry Creek Meadows was deemed complete, the City could not have conditioned its approval of the map upon Developers' payment of the fees in the future. Therefore, it was not barred by section 65961 from subsequently requiring Developers to pay the fees as a condition to its issuance of building permits for the development.

### 3. *Due Process.*

As part of its findings supporting the judgment, the trial court stated that the imposition of fees was, "violative of due process, in that (1) there is an absence of the essential nexus, there being no reasonable or rational relationship, between the said fees (and the public projects purportedly to be funded by them) and the burden created by plaintiffs' development projects which were evaluated, assessed and approved by respondent City on April 6, 1987, without the requirements that any such capital development fees be paid; and (2) to allow the imposition of said fees on plaintiffs' development projects under the facts of this case would result in the deprivation or taking of private property for a public use without the payment of just compensation."

The court erred in so stating. In arguing that the City's actions violated Developers' due process rights, Developers assume that section 65961 gave them vested rights to construct under the capital facilities fees (none) in effect at the time the vested tentative map was approved. As we have written above, no such vested rights were accorded by statute as section 65961 is not applicable to our facts. No defects in notice, public hearing requirements or in the enactment of fees generally, are otherwise argued by Developers. The record does not support the trial court's conclusion that the imposition of fees violated Developers' due process rights. Under the circumstances, since the Developers' rights to develop free of capital facilities fees did not vest until issuance of the permits, their due process rights were not implicated.[14] (Cf. *Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d 785.)[15]

---

[14]We summarily reject the first reason given by the court. We do not understand what "nexus" has to do with due process in the context presented here. As neither side has enlightened us on this point, we cannot accept the court's conclusion in this regard.

[15]Likewise, the court's finding that the imposition of fees was "an unconstitutional *ex post facto* law" cannot stand. Ex post facto principles apply only to criminal statutes. (See generally, 7 Witkin, Summary of Cal. Law, *supra*, Constitutional Law, § 419, p. 601.)

### 4. *Developers' Cross-appeal.*

The trial court limited its ruling to the 26 units which were the subject of Developers' petition and complaint. Developers now urge this court, in the interest of judicial economy, to expand the scope of the ruling to include all 195 units in Dry Creek Meadows Nos. 4 and 8.

However, the parties by stipulation agreed that this matter would proceed to hearing "specifically with respect to those twenty-six lots that are currently before the court as having met the criteria of Government Code § 66020 . . . ." Having agreed to limit the scope of the trial court's ruling, Developers are estopped to argue otherwise here.

### DISPOSITION

The judgment is reversed. Costs are awarded to the City and County.

Ardaiz, Acting P. J., and Thaxter, J., concurred.

The petition of plaintiffs and appellants for review by the Supreme Court was denied September 15, 1994. Arabian, J., was of the opinion that the petition should be granted.