Filed 4/10/15  Certified for partial publication 4/29/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GREGORY TARBET,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>EAST BAY MUNICIPAL UTILITY DISTRICT,<br><br>        Defendant and Respondent. | A140755<br><br>(Alameda County<br>Super. Ct. No. RG12615347) |

**INTRODUCTION**

Plaintiff Gregory Tarbet appeals from a judgment denying his petition for writ of mandate and dismissing his complaint.  Plaintiff sued the East Bay Municipal Utility District (District) after it refused to provide water service to his property without the grant of an easement.  He claimed the District should be required to comply with a water service provision contained in a previously approved and recorded final parcel map, which did not include the District's proposed easement.  The trial court denied his petition for writ of mandate and sustained the District's demurrer to the complaint without leave to amend.  We affirm.[1]

---

[1] Plaintiff states in his opening brief that he appeals the dismissal of the remaining causes of action following the denial of the writ of mandate.  He advances no distinct arguments concerning the merits of those causes of action.  Accordingly, our disposition applies to the entire action.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff owns the property at 21603 Banyan Street in Hayward. In 2005, the former owners started the process of subdividing a lot into three separate residential lots, one of which is plaintiff's property. In that year, the County of Alameda (County) accepted and approved Tentative Parcel Map 8743 pertaining to the property under Resolution No. 05-15. The Resolution contains the following condition: "Water services is [*sic*] to be provided to each lot and are to be connected to the [District] water system and installed at the expense of the subdivider in accordance with the requirements of said District and the approval by the Director of Public Works." The resolution also provides, "A letter from the [District] stating that it has agreed to provide water to each lot in the land division shall be submitted to the Director of Public Works."

The former owners requested a letter from the District verifying water service was available for each lot. The District stated it would provide water service contingent upon compliance with its regulations. A water service assessment was prepared by the District on August 15, 2005. The document states: "THIS IS NOT A PROPOSAL TO PROVIDE WATER SERVICES."[2] An Approved Parcel Map (Approved Map) was thereafter recorded. The Approved Map provides the District a utility easement on the newly subdivided properties in the form of a water main extension from Banyan Street to provide water to each lot.[3] Plaintiff purchased one of the three lots at foreclosure in September 2009. The property did not have water service at the time of purchase.

_____

[2] The document also states: "A main extension at the project sponsor's expense will be required to serve the proposed development. When the development plans are finalized, the project sponsor should contact EBMUD's New Business Office and request a water service estimate to determine the costs *and conditions* of providing water service to the development." (Italics added.)

[3] Both this court and the trial court below found helpful the declaration of Nancy Berchem, the New Business Representative of the District. She stated a "will serve" letter indicates only that water service is available. The District will only acquire an easement for water main extensions after a property owner has applied for water service

2

Thereafter, plaintiff applied to the District for water service. The District provided a water service *estimate* for the installation of the service connection,[4] based on a 260-foot water main extension that extends 15 feet onto plaintiff's property. The District required a 15-foot-long easement beyond plaintiff's original lot line to allow the installation and maintenance of the pipeline and blowoff assembly.[5] Plaintiff deemed the proposal "unacceptable," in part because the District sought to impose the easement on his property. The District refused to provide service based on alterations requested by plaintiff because his layout would have made it impossible to reach his meter from the proposed water main at a right angle.[6]

On October 3, 2012, plaintiff filed a second amended petition for writ of mandate and, in the alternative, a second amended complaint (SAC), which is the operative complaint in this appeal. By his petition for writ of mandate under Code of Civil Procedure section 1085, he sought a directive to compel the District "to provide water service to Plaintiff consistent with the laws and regulations pertaining to same." The remaining causes of action in the SAC state claims for unfair business practice, injunctive relief, declaratory relief, and property damage.

---

and entered into an agreement with the District to extend the water main. The District needs a specific water service application from the customer initially because it then needs to determine the proposed layout of a development and the process of customer servicing. Additionally, the District will not expend resources on acquiring property rights until the owner has formally agreed to going forward with the project by returning an executed agreement, deposit, improvement plans and final map. Plaintiff provided the trial court with no evidence rebutting these conditions were in place before the approval of the map.

[4] A service connection is the connection from a water main to the customer's meter.

[5] The blowoff assembly is a valve that allows the District to drain the water main if it needs to be repaired or flushed clean.

[6] District engineering standard practices provide that whenever possible, water meters are to be located perpendicular to the water main, in a protected location, and out of the traveled way.

On October 25, 2012, plaintiff filed a motion to bifurcate the writ of mandate cause of action and stay the remainder of the action.

On December 12, 2012, the trial court granted plaintiff's motion to bifurcate his complaint, staying all causes of action except the petition for writ of mandate.

On January 11, 2013, the District filed its answer to the petition.

On April 24, 2013, plaintiff filed his opening brief. In it, he asserted: (1) the Subdivision Map Act (Gov. Code, § 66410 et seq.)[7] (SMA) provided him with "vested rights" precluding the District from obtaining any easements it had not acquired prior to the County's approval of the parcel map for his property; (2) the District failed to abide by the County subdivision ordinance requiring the District to review the tentative parcel map and obtain any necessary easements prior to the County's approval of the final parcel map; (3) adherence to the District's principal frontage requirements was unnecessary under the District's own regulations; and (4) the District's requirement of an easement on his property was an abuse of discretion. In support of his opening brief, plaintiff sought to augment the administrative record with numerous new documents attached to his own declaration and a request for judicial notice.

On May 17, 2013, the District filed its opposition. The District also filed supporting declarations, objections to plaintiff's declaration and his attached evidentiary documents, and a request for judicial notice of relevant provisions of the County subdivision ordinance.

On August 22, 2013, the trial court issued its order denying the petition for writ of mandate. The court found the District had not abused its discretion under either the SMA, the County's codes and regulations, or its own regulations with respect to its proposed placement of water service on plaintiff's property. The court sustained the bulk

---

[7] All further undesignated statutory references are to the Government Code.

4

of the District's evidentiary objections, and overruled all but two of plaintiff's objections to District evidence.

On October 10, 2013, the District filed a demurrer to the remaining causes of action.

On November 27, 2013, the trial court filed its order sustaining the demurrer without leave to amend.

On December 12, 2013, the trial court entered a judgment of dismissal. This appeal followed.

## DISCUSSION

### I. *Standard of Review*

In reviewing the trial court's ruling on a writ of mandate, the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence. This limitation, however, does not apply to resolution of questions of law where the facts are undisputed. In such cases, as in other instances involving matters of law, the appellate court is not bound by the trial court's decision, but may make its own determination. Statutory construction is such a question of law for the courts. (*Evans v. Unemployment Ins. Appeals Bd.* (1985) 39 Cal.3d 398, 407.)

### II. *The Subdivision Map Act*

#### A. *General Provisions*

"The [SMA] empowers a local agency (i.e., a city, county or city and county) to regulate and control the design and improvement of subdivisions. [Citations.] A subdivision is broadly defined to include virtually any division of land for the present or future purpose of sale, lease, or financing. [Citation.]" (*Golden State Homebuilding Associates v. City of Modesto* (1994) 26 Cal.App.4th 601, 606 (*Golden State*).)

5

"Ordinarily, subdivision under the [SMA] may be lawfully accomplished only by obtaining local approval and recordation of a tentative and final map pursuant to section 66426, when five or more parcels are involved, or a parcel map pursuant to section 66428 when four or fewer parcels are involved. [Citation.] A local agency will approve a tentative and final map or a parcel map only after extensive review of the proposed subdivision and consideration of such matters as the property's suitability for development, the adequacy of roads, sewer, drainage, and other services, the preservation of agricultural lands and sensitive natural resources, and dedication issues. [Citations.]" (*Gardner v. County of Sonoma* (2003) 29 Cal.4th 990, 997.)

"The initial operative document in the regulatory process is a tentative map. Its contents are largely governed by local ordinance but must set out the design of the proposed subdivision and the existing conditions in and around it. [Citation.] When a tentative map is filed, the local agency is required to act on it within the period specified by the [SMA] by approving, conditionally approving, or denying it. [Citations.] To be approved, the tentative map must, among other things, be consistent with the local general plan or an existing specific plan. [Citations.]" (*Golden State, supra,* 26 Cal.App.4th 601 at p. 606.) "Approval of the vesting tentative map entitles the developer, subject to certain limitations, to proceed with the project 'in substantial compliance with the ordinances, policies, and standards . . .' in effect when the map application was deemed complete. [Citation.]" (*Kaufman & Broad Central Valley, Inc. v. City of Modesto* (1994) 25 Cal.App.4th 1577, 1586 (*Kaufman*).)

### B. The District Is Not Subject to the SMA's Vesting Provisions

Plaintiff asserts the District cannot acquire an easement or obtain County approval of its proposed service plan because the County is prohibited from reopening an approved final map. The District asserts its sole duty under the SMA is limited to a review of the available water supply, a duty that does not apply to subdivisions the size of the lot at issue here. The District also asserts it is not subject to any vesting rights plaintiff may

have acquired because the District is not a "local agency" subject to vesting rights under the SMA. The trial court found that neither the SMA nor the County's subdivision ordinance imposed a duty on the District to have acquired a pipeline easement during the parcel map review process.

On appeal, plaintiff does not contend the District is a "local agency." Instead he asserts the County, which is a local agency, is prevented from granting the District an additional easement. He further claims the District "is at the very least subject to the same constraints as a local agency under the [SMA], and is not entitled to unlimited, unregulated demands for easements from residential property owners." The authorities he relies on are not persuasive.

The relevant statutes are clearly intended to apply to a local agency only. Section 66420 provides: " 'Local agency' means a city, county or city and county." Local agencies are limited in terms of their ability to require changes after a final map has been approved. Section 66472.1 provides, in part: "[A]fter a final map or parcel map is filed in the office of the county recorder, the recorded final map may be modified by a certificate of correction or an amending map, if authorized by local ordinance, if the *local agency* finds that there are changes in circumstances that make any or all of the conditions of the map no longer appropriate or necessary and that the modifications do not impose any additional burden on the fee owners of the real property, and if the modifications do not alter any right, title, or interest in the real property reflected on the recorded map . . . ." (Italics added.)

Additionally, section 66498.1, subdivision (b), provides in relevant part: "When a local agency approves or conditionally approves a vesting tentative map, that approval shall confer a vested right to proceed with development in substantial compliance with

7

the ordinances, policies, and standards described in Section 66474.2. . . ."[8]  Section

66498.9, subdivision (b), provides that the purpose underlying the vesting tentative map

statutes is "[t]o ensure that local requirements governing the development of a proposed

subdivision are established in accordance with Section 66498.1 when a local agency

approves or conditionally approves a vesting tentative map.  The private sector should be

able to rely upon an approved vesting tentative map prior to expending resources and

incurring liabilities without the risk of having the project frustrated *by subsequent action*

*by the approving local agency,* provided the time periods established by this article have

not elapsed."   (Italics added.)

Relying on *Bright Development v. City of Tracy* (1993) 20 Cal.App.4th 783

(*Bright Development*), plaintiff claims the District "must be subject to the dictates and

restraints contained in the [SMA] if a property owner is ever to obtain vested rights in the

subdivision."  In that case, the City of Tracy required a developer to place off-site utilities

underground based on construction standards that did not exist when the vesting tentative

map was approved.  The developer challenged that requirement.  The appellate court

agreed with the developer, noting that when the developer's application was complete the

City of Tracy had an unwritten policy that developers should place off-site utilities

underground; however, there was no written rule or statute that required them to do so.

The court held an "ordinance, policy or standard . . . which is written and accessible is

reasonably calculated to apprise interested parties of their responsibilities and would

suffice to supply constructive notice." (*Bright Development*, at p. 798.)

Plaintiff also cites to *Kaufman, supra,* 25 Cal.App.4th 1577*,* in which the City of

Modesto had compelled the plaintiff to pay higher developer fees than those required at

---

[8] Section 66474.2, subdivision (a) provides, in part: "Except as otherwise provided . . ., in determining whether to approve or disapprove an application for a tentative map, the local agency shall apply only those ordinances, policies, and standards in effect at the date the local agency has determined that the application is complete . . . ."

8

the time his predecessor had applied for a vesting tentative subdivision map. The plaintiff paid the fees under protest and brought an action seeking reimbursement of fees paid in excess of the rate in effect when the vesting tentative subdivision map was deemed complete. (*Id*. at pp. 1583-1584.) The *Kaufman* court concluded: "We interpret section 66498.1 to apply this general notice requirement *to a local agency* seeking to pass along a fee increase imposed after a developer's rights have vested. That is, the ordinances, policies, and standards in effect when the developer's vesting tentative map is deemed complete, must include not only a general fee escalation provision but must also provide reasonable notice of the nature of the fee and the manner of its calculation. A developer about to commit substantial time and resources to a project should be able to predict with at least some degree of assurance what the fee will be when the time comes to pay it." (25 Cal.App.4th at p. 1589, italics added.)

After reviewing the ordinances in question, the *Kaufman* court found that although the city's fee policy contemplated future fee increases, "it did not foretell the comprehensive reevaluation of the fee structure which the City was later to conduct. In fact, the policy suggested the increases would be limited to relatively modest and predictable cost of building adjustments." (*Kaufman, supra,* 25 Cal.App.4th at p. 1589.) The court concluded the critical point in the process for a developer to have actual or constructive notice of future fee increases "is the date on which the map application is complete." (*Id.* at p. 1590.)

In the present case, during the approval process for the parcel map the District was not asked to, and did not, create or impose conditions or requirements on the developer. Nor did it have any authority over the map approval process. Rather, it was the County that acted as the "local agency" under the SMA and approved Parcel Map 8743 through Resolution No. 05-15. In other words, neither *Bright Development* nor *Kaufman* apply to the situation in this case. Because the District is not a "local agency" subject to the vesting rights restrictions of the SMA, the cases plaintiff relies on are inapposite. A case

9

is not authority for issues it does not consider. (*Contra Costa Water Dist. v. Bar-C Properties* (1992) 5 Cal.App.4th 652, 660.)

We also disagree with plaintiff's theory that the District waived its right to seek an easement by not asserting it at the time it issued the water service assessment letter. The only provision in the SMA that applies to a public water agency is section 66473.7. Section 66473.7 " 'generally requires a city or county, before approving a subdivision map for a residential development of more than 500 units, to obtain from the applicable public water system a "written verification" that adequate water supplies will be available for that project as well as other existing and planned future uses for a projected 20-year period.' " (*Cherry Valley Pass Acres & Neighbors v. City of Beaumont* (2010) 190 Cal.App.4th 316, 332.) There are no provisions in the SMA requiring a water agency to agree to serve water to individual customers like plaintiff here or to acquire an easement from property owners for the purposes of providing water service. Rather, the SMA expressly states that "[n]othing in this section shall be construed to create a right or entitlement to water service or any specific level of water service." (§ 66473.7, subd. (m).) The District was under no duty to acquire an easement on the property at the time the Parcel Map was reviewed and approved.[9]

Finally, it is unclear that the SMA bars the proposed easement, even from the perspective of the County. As to water service, the County only required the former property owner to obtain a "will serve" letter from the District. Condition 20 of Resolution No. 05-15 expressly mandated that the developer was to provide water service to each subdivided lot in accordance with *the District's* requirements. The District's water service assessment submitted in connection with the former owner's development

---

[9] As a practical matter, it makes little sense to require a water utility to request an easement for water service pipe lines before the housing units are in the construction phase of development. The utility would have no way to insure the development would ultimately be constructed in a manner consistent with the easement it had already obtained.

plan clearly indicated the assessment was not a plan for water service.  Thus, even if the SMA applies to the County, it does not appear the original developer obtained a vested right to have water service installed on the subject property unconditioned by any future District requirements.

Section 66411, also relied on by plaintiff,  provides that "[r]egulation and control of the design and improvement of subdivisions are vested in the legislative bodies of local agencies.  Each local agency shall, by ordinance, regulate and control *the initial design and improvement* of . . . subdivisions for which this division requires a tentative and final or parcel map."  (Italics added.)  The statute, by its terms, applies to the initial design of a subdivision.  There is nothing in this section which deprives the District of control over the final design of its water delivery system.  In sum, the record supports the conclusion that the developer of the Banyan Street lots was put on notice that when it chose to develop the lots it would need to serve water to them in accordance with the District's regulations.

### III. *Whether the District Has Invaded County Authority*

Plaintiff further asserts that the District's demand for an easement is an improper invasion on the County's authority to regulate the size of lots and placement of water service.  He relies on section 53091, subdivision (a), which provides: "Each local agency shall comply with all applicable building ordinances and zoning ordinances of the county or city in which the territory of the local agency is situated."  His reliance is misplaced.  The cited section is not part of the SMA.  Rather, section 53091 is a part of a separate statutory scheme regulating the conditions under which local agencies are subject to local building and zoning laws for *their own* projects.  (See *Modesto Irrigation Dist. v. Modesto* (1962) 210 Cal.App.2d 652, 656-657.)  For this reason, his reliance on *City of Lafayette v. East Bay Mun. Utility Dist.* (1993) 16 Cal.App.4th 1005 is also misplaced.  That case involved the denial of a zoning permit to locate a District facility in the City of Lafayette, and held section 53091 "generally requires local agencies, such as appellant, to

11

comply with the building and zoning ordinances of cities and counties in which they are situated." (*Id*. at p. 1013.)

Plaintiff further asserts that certain County ordinances required the District to obtain all easements from the developer prior to the County's approval of the Approved Map. As the District notes, with respect to several of these ordinances this argument was not raised below and hence is waived.[10] In any event, the cited ordinances appear to describe the required contents of a parcel map and the approval process for the Map. They do not appear to place any restrictions on the conduct of the District itself.

As to the contentions that plaintiff did raised below, we concur with the trial court's view that Alameda County Code of Ordinances, title 16, ordinance No. 16.20.030 does not apply to the District. That provision states, in part: "Improvements that may be required *by the advisory agency* for subdivision into four or [fewer] lots are limited to the dedication of rights-of-way, easements, and the construction of reasonable off-site and on-site improvements for the lots being created. . . ." There is nothing in the regulations supporting the view that the District qualifies as an "advisory agency" under these regulations.[11]

---

[10]At oral argument, plaintiff spent considerable time contending Alameda County Code of Ordinances, title 16, ordinance No. 16.12.110, controls and precludes defendant from seeking an easement on plaintiff's property. He suggests other ordinances also apply. Remarkably, plaintiff makes these contentions for the first time on appeal, as is pointed out by defendant. Because the argument is presented for the first time on appeal, it is waived. (*Westcon Construction Corp. v. County of Sacramento* (2007) 152 Cal.App.4th 183, 194.) Plaintiff's argument that the District is precluded from requiring an easement on his property under Condition 21 of Resolution No. 05-15 is also waived for failure to raise it below.

[11] Alameda County Code of Ordinances, title 16, ordinance No. 16.04.060, defines "advisory agency" as "a designated official or an official body charged with the duty of making investigations and reports on the design and improvement of proposed subdivisions of real property, the imposing of requirements or conditions thereon, or having the authority by this chapter to approve, conditionally approve, or disapprove maps." Alameda County Code of Ordinances, title 16, ordinance No. 16.04.040 lists the

## IV. *The District's Actions Were Not Arbitrary or Capricious.*

Plaintiff contends the District abused its discretion by acting contrary to its own regulations. We disagree.

The Regulations Governing Water Service to Customers of the East Bay Municipal Utility District (District Regulations) provide that "[w]hen an application is received for a standard service to premises where a service connection does not exist, . . . a standard service may be granted and installed provided the applicant meets the District's general requirements as stated elsewhere in these regulations, and [¶] . . . [¶] [t]he applicant agrees to meter the development as specifically approved by the District." (District Regs., § 3, p. 3-A.) The District requires a service connection to be installed in the "principal frontage." (*Id.,* § 18, p. 18.) "Principal frontage" is defined as "that part of the perimeter of the major portion of the premises where the principal use of the property is located, which fronts on a public street or private road or driveway from which the premises generally receives access, public services and utilities, as determined by the District." (*Id.,* § 1, p. 1-B.)

The District has the final determination of what constitutes principal frontage. (District Regs., § 2, p. 2-A.) The District's regulations require the extension of a water main if an applicant's principal frontage does not front an existing main, and require an applicant to execute an agreement for that main extension prior to the installation of service. (*Id.,* § 4, p. 4-B.) When an extension of a main onto private property is necessary, District engineering practices require an easement for the main on the property in order to allow the District room to install the pipeline and appurtenances, and to provide access for any future maintenance and to operate the water system. The

---

designated officials and official bodies that are deemed advisory agencies. The District is not among them.

easement is required for the full length of the pipeline, and it must extend just past the blowoff assembly, located at the end of the water main.[12]

Here, the record shows the District applied its regulations and engineering standard practices to determine that the principal frontage on plaintiff's property is adjacent to his driveway, that the water meter on his property needs to be installed off the driveway and next to a light fixture, that a 15-foot main extension onto his property is necessary to reach this location, and that he will need to provide the District with an easement for that main extension. The District rejected plaintiff's own proposed location for a water meter because it would have been impossible to reach that location at a right angle.[13]

The trial court found plaintiff did not factually demonstrate any "unusual conditions" existed on his property that would allow a waiver of the District's principal frontage requirements. That provision requires that the suitability of an alternative to principal frontage be "determined by the District," and only after "the District has determined that a main extension is not desirable because of geotechnical factors or not necessary to facilitate system operation." (District Regs., § 4, p. 4-H.) Plaintiff asserts the District should apply these waiver provisions to his property. Much of his argument is based on evidence, such as photographs and drawings, which he claims show the District "routinely" grants waivers.[14] Even if the District does routinely grant waivers,

---

[12] District Engineering Standard Practice 517.1 lists the various maintenance considerations for establishing easements.

[13] As to conflicts with other utilities' regulations, such as Pacific Gas and Electric's separation requirements, the District notes plaintiff has refused to request a variance from that agency.

[14] As we will discuss below, the trial court sustained the bulk of the District's evidentiary objections to this evidence. On appeal, plaintiff's requests for judicial notice are granted as to the existence of the requested documents only. While courts may notice official acts and public records, "we do not take judicial notice of the truth of all matters stated

14

such evidence does not support the conclusion that the failure to grant a waiver in *this* case constitutes an abuse of discretion.

The trial court also concluded the District's actions were based on legitimate operational and safety concerns. These concerns include standardization of water service installations as a means of saving costs on stocking standard equipment, minimizing damage to property and the streets when replacing service laterals, and allowing repair crews to expect that the service installation will be installed and placed consistently, allowing for safer, quicker repairs.

Finally, we reject plaintiff's argument that the District's easement requirement constitutes an unlawful taking of private property. The SAC does not allege a cause of action for an unconstitutional taking, thus the allegation on appeal is not relevant to this lawsuit. In any event, his taking claim is based on the same arguments discussed above, none of which convince us that the District has acted unlawfully.

## V.    *The Trial Court's Evidentiary Rulings*

Plaintiff claims the trial court committed reversible error when it sustained the District's objections to his evidence. We review rulings on evidentiary objections for abuse of discretion. (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335.) It is not enough for plaintiff to show error; he must also show prejudice. (Evid. Code, § 353, subd. (b).) That is, he must show that if the evidence had been admitted, the outcome would have been more favorable. (*Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 853.)

Appellant asserts he should have been allowed to introduce evidence outside of the administrative record, such as photos of other parcels, in order to establish that the District is not applying its own standards and regulations in an equal and fair manner as it had recently done with other properties similarly situated. We have already concluded

therein." (*Love v. Wolf* (1964) 226 Cal.App.2d 378, 403; accord, *People v. Long* (1970) 7 Cal.App.3d 586, 591.)

15

that even if the District has granted waivers for other properties, there is nothing in the relevant regulations that prohibits the District from exercising its discretion to deny a waiver to plaintiff. Thus, even if the trial court erred in excluding the evidence, we would not find the error prejudicial.

## DISPOSITION

The judgment is affirmed.


_____
Dondero, J.


We concur:


_____
Humes, P.J.


_____
Margulies, J.

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GREGORY TARBET,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>EAST BAY MUNICIPAL UTILITY DISTRICT,<br><br>        Defendant and Respondent. | A140755<br><br>(Alameda County<br>Super. Ct. No. RG12615347)<br><br>ORDER CERTIFYING OPINION<br>FOR PARTIAL PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter, filed on April 10, 2015, was not certified for publication in the Official Reports. After the court's review of requests under California Rules of Court, rule 8.1120, and good case established under rule 8.1105, it is hereby ordered pursuant to rule 8.1110 that the opinion should be published in the Official Records, with the exception of parts IV and V.

        Dated:

_____
Dondero, J.

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. Evilio Grillo
                Hon. Kimberly E. Colwell

Counsel:

Law Offices of Wallace C. Doolittle, Wallace C. Doolittle, James Patrick Downs, for Plaintiff and Appellant.

East Bay Municipal Utility District Office of General Counsel, Jylana Collins, Craig S. Spencer, Derek Todd McDonald, for Defendant and Respondent.